No. 24-2806

_____

In the
# United States Court of Appeals
### for the Seventh Circuit
_____

ANA BERNAL, AMIEE MARQUEZ,
PATRICIA JUAREZ, AND CLARA ROA,

*Petitioners–Appellants,*

v.

KOHL'S CORPORATION AND KOHL'S, INC.,

*Respondents–Appellees.*

_____

On Appeal from the United States District Court for the
Eastern District of Wisconsin, No. 2:23-cv-01542
Hon. Lynn Adelman, United States District Judge

_____

## PETITIONERS-APPELLANTS' OPENING BRIEF AND
## REQUIRED SHORT APPENDIX

_____

Martin Woodward
KITNER WOODWARD PLLC
13101 Preston Road
Suite 110
Dallas, TX 75240
(214) 443-4300
*martin@kitnerwoodward.com*

Kiran N. Bhat
  *Counsel of Record*
KELLER POSTMAN LLC
1101 Connecticut Avenue, N.W.,
Suite 1100
Washington, DC 20036
(202) 918-1123
*kiran.bhat@kellerpostman.com*

Ethan H. Ames
KELLER POSTMAN LLC
150 N. Riverside Plaza,
Suite 4100
Chicago, IL 60606
(312) 741-5220
*ethan.ames@kellerpostman.com*

*Counsel for Petitioners–Appellants*

**APPEARANCE & CIRCUIT RULE 26.1 DISCLOSURE STATEMENT**

Appellate Court No: 24-2806

Short Caption: Bernal, et al. v. Kohl's Corporation, et al.

    To enable the judges to determine whether recusal is necessary or appropriate, an attorney for a non-governmental party, amicus curiae, intervenor or a private attorney representing a government party, must furnish a disclosure statement providing the following information in compliance with Circuit Rule 26.1 and Fed. R. App. P. 26.1.

    The Court prefers that the disclosure statements be filed immediately following docketing; but, the disclosure statement must be filed within 21 days of docketing or upon the filing of a motion, response, petition, or answer in this court, whichever occurs first. Attorneys are required to file an amended statement to reflect any material changes in the required information. The text of the statement must also be included in the front of the table of contents of the party's main brief. **Counsel is required to complete the entire statement and to use N/A for any information that is not applicable if this form is used.**

        ☐    **PLEASE CHECK HERE IF ANY INFORMATION ON THIS FORM IS NEW OR REVISED AND INDICATE WHICH INFORMATION IS NEW OR REVISED.**

(1)    The full name of every party that the attorney represents in the case (if the party is a corporation, you must provide the corporate disclosure information required by Fed. R. App. P. 26.1 by completing item #3):

Ana Bernal, Amiee Marquez, Patricia Juarez, and Clara Roa

(2)    The names of all law firms whose partners or associates have appeared for the party in the case (including proceedings in the district court or before an administrative agency) or are expected to appear for the party in this court:

Keller Postman LLC, Kitner Woodard, PLLC, Lynch Carpenter LLP

(3)    If the party, amicus or intervenor is a corporation:

    i)    Identify all its parent corporations, if any; and

        N/A

    ii)    list any publicly held company that owns 10% or more of the party's, amicus' or intervenor's stock:

        N/A

(4)    Provide information required by FRAP 26.1(b) – Organizational Victims in Criminal Cases:

N/A

(5)    Provide Debtor information required by FRAP 26.1 (c) 1 & 2:

N/A

Attorney's Signature: /s/ Kiran Narayan Bhat    Date: February 6, 2025

Attorney's Printed Name: Kiran Narayan Bhat

Please indicate if you are *Counsel of Record* for the above listed parties pursuant to Circuit Rule 3(d).    Yes ☑  No ☐

Address: 1101 Connecticut Avenue, N.W., Suite 1100

Washington, DC 20036

Phone Number: (202) 918-1123    Fax Number:

E-Mail Address: kiran.bhat@kellerpostman.com

rev. 12/19 AK

i

**APPEARANCE & CIRCUIT RULE 26.1 DISCLOSURE STATEMENT**

Appellate Court No: <u>24-2806</u>

Short Caption: <u>Bernal, et al. v. Kohl's Corporation, et al.</u>

    To enable the judges to determine whether recusal is necessary or appropriate, an attorney for a non-governmental party, amicus curiae, intervenor or a private attorney representing a government party, must furnish a disclosure statement providing the following information in compliance with Circuit Rule 26.1 and Fed. R. App. P. 26.1.

    The Court prefers that the disclosure statements be filed immediately following docketing; but, the disclosure statement must be filed within 21 days of docketing or upon the filing of a motion, response, petition, or answer in this court, whichever occurs first. Attorneys are required to file an amended statement to reflect any material changes in the required information.  The text of the statement must also be included in the front of the table of contents of the party's main brief.  **Counsel is required to complete the entire statement and to use N/A for any information that is not applicable if this form is used.**

☐    **PLEASE CHECK HERE IF ANY INFORMATION ON THIS FORM IS NEW OR REVISED AND INDICATE WHICH INFORMATION IS NEW OR REVISED.**

(1)    The full name of every party that the attorney represents in the case (if the party is a corporation, you must provide the corporate  disclosure information required by Fed. R. App. P. 26.1 by completing item #3):
<u>Ana Bernal, Amiee Marquez, Patricia Juarez, and Clara Roa</u>

(2)    The names of all law firms whose partners or associates have appeared for the party in the case (including proceedings in the district court or before an administrative agency) or are expected to appear for the party in this court:
<u>Keller Postman LLC, Kitner Woodard, PLLC, Lynch Carpenter LLP</u>

(3)    If the party, amicus or intervenor is a corporation:

    i)    Identify all its parent corporations, if any; and

        <u>N/A</u>

    ii)    list any publicly held company that owns 10% or more of the party's, amicus' or intervenor's stock:

        <u>N/A</u>

(4)    Provide information required by FRAP 26.1(b) – Organizational Victims in Criminal Cases:
<u>N/A</u>

(5)    Provide Debtor information required by FRAP 26.1 (c) 1 & 2:
<u>N/A</u>

Attorney's Signature: <u>/s/ Ethan A mes</u>    Date: <u>February 12, 2025</u>

Attorney's Printed Name: <u>Ethan Ames</u>

Please indicate if you are *Counsel of Record* for the above listed parties pursuant to Circuit Rule 3(d).    Yes ☐    No ☑

Address: <u>150 N. Riverside Plaza, Suite 4100</u>

    <u>Chicago, IL 60606</u>

Phone Number: <u>(312) 741-5220</u>    Fax Number: <u> </u>

E-Mail Address: <u>ethan.ames@kellerpostman.com</u>

**APPEARANCE & CIRCUIT RULE 26.1 DISCLOSURE STATEMENT**

Appellate Court No: 24-2806 _____

Short Caption: Bernal, et al. v. Kohl's Corporation, et al. _____

   To enable the judges to determine whether recusal is necessary or appropriate, an attorney for a non-governmental party, amicus curiae, intervenor or a private attorney representing a government party, must furnish a disclosure statement providing the following information in compliance with Circuit Rule 26.1 and Fed. R. App. P. 26.1.

   The Court prefers that the disclosure statements be filed immediately following docketing; but, the disclosure statement must be filed within 21 days of docketing or upon the filing of a motion, response, petition, or answer in this court, whichever occurs first. Attorneys are required to file an amended statement to reflect any material changes in the required information.  The text of the statement must also be included in the front of the table of contents of the party's main brief.  **Counsel is required to complete the entire statement and to use N/A for any information that is not applicable if this form is used.**

☐     **PLEASE CHECK HERE IF ANY INFORMATION ON THIS FORM IS NEW OR REVISED AND INDICATE WHICH INFORMATION IS NEW OR REVISED.**

(1)     The full name of every party that the attorney represents in the case (if the party is a corporation, you must provide the corporate  disclosure information required by Fed. R. App. P. 26.1 by completing item #3):
 Ana Bernal, Amiee Marquez, Patricia Juarez, and Clara Roa _____

_____

(2)     The names of all law firms whose partners or associates have appeared for the party in the case (including proceedings in the district court or before an administrative agency) or are expected to appear for the party in this court:
 Keller Postman LLC, Kitner Woodward, PLLC, Lynch Carpenter LLP _____

_____

(3)     If the party, amicus or intervenor is a corporation:

   i)     Identify all its parent corporations, if any; and

   N/A _____

   ii)     list any publicly held company that owns 10% or more of the party's, amicus' or intervenor's stock:

   N/A _____

(4)     Provide information required by FRAP 26.1(b) – Organizational Victims in Criminal Cases:

 N/A _____

(5)     Provide Debtor information required by FRAP 26.1 (c) 1 & 2:

 N/A _____

Attorney's Signature: /s/ Martin Woodward _____     Date:  February 12, 2025 _____

Attorney's Printed Name:  Martin Woodward _____

Please indicate if you are *Counsel of Record* for the above listed parties pursuant to Circuit Rule 3(d).     Yes ☐     No ☑

Address:  13101 Preston Road, Suite 110 _____

    Dallas, TX  75240 _____

Phone Number:  (214) 443-4300 _____     Fax Number: _____

E-Mail Address: martin@kitnerwoodward.com _____

rev. 12/19 AK

# TABLE OF CONTENTS

DISCLOSURE STATEMENTS ................................................................... i

TABLE OF AUTHORITIES ............................................................... vii

INTRODUCTION ................................................................................ 1

STATEMENT OF JURISDICTION ........................................................ 7

STATEMENT OF THE ISSUES ........................................................... 8

STATEMENT OF THE CASE ............................................................... 9

    A.   For A Decade, Kohl's Defends Against Consumer Class Actions Accusing It Of False Advertising ................... 9

    B.   To Avoid Class Actions, Kohl's Requires Customers To Arbitrate At The AAA And Agrees To Bear Most Costs. ................................................................................ 11

    C.   Kohl's Continues Its False Advertising, Giving Rise To New Disputes Governed By The AAA Agreement. ............. 14

    D.   By Filing AAA Demands, Appellants Reject Kohl's Mid-Dispute Effort To Modify The AAA Agreement. ........ 16

    E.   Rule 12 And The AAA Require Kohl's To Submit The AAA Agreement For Review, But Kohl's Refuses. .............. 18

    F.   Appellants Submit The Dispute Over Kohl's Refusal To Comply With Rule 12 To Court, As The AAA Suggested. ............................................................................ 21

SUMMARY OF ARGUMENT ............................................................. 23

STANDARD OF REVIEW .................................................................. 26

ARGUMENT ..................................................................................... 26

   I.   Section 4 Required The District Court To Compel Arbitration. ................................................................... 26

      A.   Appellants Met The Requirements For § 4 Relief ............. 28

         1.   The parties had a valid written agreement to arbitrate. ............................................................... 29

2.  The disputes fell within the scope of the agreement. ...................................................... 30

3.  Kohl's refused to arbitrate by breaching the agreement. ...................................................... 31

B.  *Wallrich* Does Not Compel A Different Result. ................. 32

1.  The district court misapplied *Wallrich*. ...................... 32

2.  The district court overread the limited legal principle that *Wallrich* expressed. ............................. 35

3.  This Court cannot speculate about how Kohl's or the AAA would handle compelled arbitrations. .......... 38

II.  The District Court Was Obligated To Avoid Construing Kohl's Promise To Arbitrate As Illusory. ................................... 39

A.  Rule 12 Is Not A License For Businesses To Escape AAA Consumer Arbitration. ................................................. 39

B.  Any Contrary Interpretation Subverts Both The Implied Covenant And The FAA. ....................................... 44

III. Kohl's Offered No Valid Justification For Its Refusal To Arbitrate, Warranting Statutory Sanctions. ............................. 46

A.  Kohl's Mid-Dispute Effort To Modify The AAA Arbitration Agreement Was Invalid. ................................... 48

1.  The law barred the modifications. ............................... 48

2.  Appellants' rejection barred the modifications. .......... 51

B.  Even If Appellants Somehow Assented To Them, The New Terms Are Unconscionable And Unenforceable. ........ 53

1.  The new terms are procedurally and substantively unconscionable. ...................................... 53

2.  The new terms are unconscionable because they provide for aggregative arbitration alongside a class waiver. ................................................................ 58

3.  The AAA arbitration agreement remains in place. ...... 60

C.  The Court Should Require Kohl's To Pay Appellants' Arbitration Fees And Costs Under California Law. ........... 61

   1.  California law applies and requires sanctions. ........... 62

   2.  The FAA does not preempt section 1281.97. ............... 65

CONCLUSION ....................................................................... 67

CERTIFICATE OF COMPLIANCE ......................................... 68

CIRCUIT RULE 30(d) CERTIFICATION ............................... 69

REQUIRED SHORT APPENDIX ................................. RSA-001

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*A.D. v. Credit One Bank, N.A.*,
   885 F.3d 1054 (7th Cir. 2018).......................................................26, 28

*Adams v. Postmates, Inc.*,
   414 F. Supp. 3d 1246 (N.D. Cal. 2019), *aff'd,* 823 F. App'x
   535 (9th Cir. 2020) ........................................................................36, 38

*Agerkop v. Sisyphian LLC*,
   No. 2:19-cv-10414, 2021 WL 1940456 (C.D. Cal. Apr. 13,
   2021)....................................................................................................66

*Airs Int'l, Inc. v. Perfect Scents Distribs., Ltd.*,
   902 F. Supp. 1141 (N.D. Cal. 1995) ....................................................60

*Alday v. Raytheon Co.*,
   693 F.3d 772 (9th Cir. 2012).................................................................43

*Am. Bldg. Maint. Co. v. Indem. Ins. Co. of N. Am.*,
   7 P.2d 305 (Cal. 1932)..........................................................................52

*Am. Exp. Co. v. Italian Colors Rest.*,
   570 U.S. 228 (2013).......................................................... 12, 13, 14, 45

*AT&T Mobility LLC v. Concepcion*,
   563 U.S. 333 (2011)....................................4, 11, 24, 28, 39, 58, 59, 60

*Azteca Constr., Inc. v. ADR Consulting, Inc.*,
   18 Cal. Rptr. 3d 142 (Cal. Ct. App.), *as modified* (Sept. 9,
   2004).......................................................................................... 6, 62, 65

*Beidel v. Sideline Software, Inc.*,
   842 N.W.2d 240 (Wis. 2013) ...............................................................44

*Belyea v. GreenSky, Inc.*,
   637 F. Supp. 3d 745 (N.D. Cal. 2022)..................................................66

*Berman v. Freedom Fin. Network, LLC,*
  30 F.4th 849 (9th Cir. 2022) ............................................................ 51

*Bertels v. Farm Bureau Prop. & Cas. Ins. Co.,*
  123 F.4th 1068 (10th Cir. 2024) ..................................................... 43

*Brooks v. WarnerMedia Direct, LLC,*
  No. 1:23-cv-11030, 2024 WL 3330305 (S.D.N.Y. July 8,
  2024) ............................................................................... 3, 34, 35

*Brown v. Dillard's, Inc.,*
  430 F.3d 1004 (9th Cir. 2005) .................................................. 31, 35

*Carnegie v. Household Int'l, Inc.,*
  376 F.3d 656 (7th Cir. 2004) ........................................................... 11

*Chodos v. W. Publ'g Co.,*
  292 F.3d 992 (9th Cir. 2002) ..................................................... 42, 44

*Coady v. Cross Country Bank,*
  729 N.W.2d 732 (Wis. Ct. App. 2007) ............................................. 58

*Cobb v. Ironwood Country Club,*
  183 Cal. Rptr. 3d 282 (Cal. Ct. App. 2015) .................................... 49

*Coinbase, Inc. v. Suski,*
  602 U.S. 143 (2024) .......................................................................... 3

*Cottonwood Fin., Ltd. v. Estes,*
  810 N.W.2d 852 (Wis. Ct. App. 2012) ............................................. 59

*Dealer Comput. Servs., Inc. v. Old Colony Motors, Inc.,*
  588 F.3d 884 (5th Cir. 2009) ........................................................... 37

*Dean Witter Reynolds, Inc. v. Byrd,*
  470 U.S. 213 (1985) .................................................................. 27, 45

*Devine v. Notter,*
  753 N.W.2d 557 (Wis. Ct. App. 2008) ............................................. 42

*Dickinson v. Heinold Sec., Inc.*,
  661 F.2d 638 (7th Cir. 1981), *abrogated on other grounds*
  *by Dean Witter Reynolds, Inc. v. Byrd*, 470 U.S. 213 (1985) .............. 27

*Discover Bank v. Superior Ct.*,
  113 P.3d 1100 (Cal. 2005) ............................................................ 58, 59

*Domer v. Menard, Inc.*,
  116 F.4th 686 (7th Cir. 2024) ...................................................... 29, 30

*Edmondson v. Lilliston Ford Inc.*,
  722 F. App'x 251 (3d Cir. 2018) ............................................ 35, 36, 37

*Eliasieh v. Legally Mine, LLC*,
  No. 3:18-cv-03622, 2020 WL 1929244 (N.D. Cal. Apr. 21,
  2020) ...................................................................................... 31, 35

*Epic Sys. Corp. v. Lewis*,
  584 U.S. 497 (2018) .......................................................................... 45

*Freeman v. SmartPay Leasing, LLC*,
  771 F. App'x 926 (11th Cir. 2019) ............................................... 31, 35

*Gallo v. Wood Ranch USA, Inc.*,
  297 Cal. Rptr. 3d 373 (Cal. Ct. App. 2022) .................................... 6, 65

*Galt v. Libbey-Owens-Ford Glass Co.*,
  376 F.2d 711 (7th Cir. 1967) ...................................................... 28, 35

*Gore v. Alltel Commc'ns, LLC*,
  666 F.3d 1027 (7th Cir. 2012) ........................................................ 30

*Green Tree Fin. Corp. v. Randolph*,
  531 U.S. 79 (2000) .......................................................................... 12

*Gupta v. Morgan Stanley Smith Barney, LLC*,
  934 F.3d 705 (7th Cir. 2019) ...................................................... 29, 31

*Heckman v. Live Nation Ent., Inc.*,
  120 F.4th 670 (9th Cir. 2024)
  ..................................................... 5, 25, 49, 55, 56, 58, 59, 60

ix

*Hennessey v. Kohl's Corp.*,
571 F. Supp. 3d 1060 (E.D. Mo. 2021) .................................................. 30

*Hennessey v. Kohls Corp.*,
No. 4:19-cv-01866, 2020 WL 870982 (E.D. Mo. Feb. 21,
2020) .................................................................................................... 10

*Hernandez v. Sohnen Enters. Inc.*,
321 Cal. Rptr. 3d 283 (Cal. Ct. App.), *review granted*, 553
P.3d 866 (Cal. Aug. 21, 2024) ............................................................ 66

*Hinojos v. Kohl's Corp.*,
718 F.3d 1098 (9th Cir.), *as amended on denial of reh'g
and reh'g en banc* (July 8, 2013) ........................................................ 10

*Hoeg v. Samsung Elecs. Am., Inc.*,
No. 24-1274, 2024 WL 3593896 (7th Cir. July 31,
2024) ..................................................................................... 33, 38, 41

*Hohenshelt v. Superior Ct.*,
318 Cal. Rptr. 3d 475 (Cal. Ct. App. 2024), *review granted*
549 P.3d 143 (Cal. June 12, 2024) ...................................................... 66

*Kiefer Specialty Flooring, Inc. v. Tarkett, Inc.*,
174 F.3d 907 (7th Cir. 1999) ............................................................. 29

*Kim v. Allison*,
87 F.4th 994 (9th Cir. 2023) ............................................................... 49

*Kindred Nursing Ctrs., Ltd. P'ship v. Clark*,
581 U.S. 246 (2017) ........................................................................... 65

*Lamps Plus v. Varela*,
587 U.S. 176 (2019) ........................................................................... 46

*Le v. Kohl's Corp.*,
160 F. Supp. 3d 1096 (E.D. Wis. 2016) .............................................. 10

*Lee v. Citigroup Corp. Holdings, Inc.*,
No. 3:22-cv-02718, 2023 WL 6132959 (N.D. Cal. Aug. 29,
2023) .................................................................................................... 66

*Lifescan, Inc. v. Premier Diabetic Services, Inc.*,
  363 F.3d 1010 (9th Cir. 2004) ............................................................ 37

*M & G Polymers USA, LLC v. Tackett*,
  574 U.S. 427 (2015) ........................................................ 4, 24, 39, 43

*MacClelland v. Cellco P'ship*,
  609 F. Supp. 3d 1024 (N.D. Cal. 2022), *appeal dismissed
  by joint agreement*, No. 22-16020, 2024 WL 5290897 (9th
  Cir. Oct. 3, 2024) .................................................................................. 56

*Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.*,
  473 U.S. 614 (1985) .............................................................................. 12

*Murillo v. Kohl's Corp.*,
  197 F. Supp. 3d 1119 (E.D. Wis. 2016) .............................................. 10

*Nagrampa v. MailCoups, Inc.*,
  469 F.3d 1257 (9th Cir. 2006) ............................................................ 54

*Nelsen v. Farmers Mut. Auto. Ins. Co.*,
  90 N.W.2d 123 (Wis. 1958) ................................................................. 51

*Noble Cap. Fund Mgmt., L.L.C. v. US Cap. Glob. Inv. Mgmt.,
  L.L.C.*,
  31 F.4th 333 (5th Cir. 2022) .............................................................. 37

*OTO, L.L.C. v. Kho*,
  447 P.3d 680 (Cal. 2019) ............................................................. 53, 55

*Pandolfi v. AviaGames, Inc.*,
  No. 3:23-cv-05971, 2024 WL 4051754 (N.D. Cal. Sept. 4),
  *appeal filed*, No. 24-5817 (9th Cir. Sept. 24,
  2024) ................................................................................... 55, 56, 57

*Peleg v. Neiman Marcus Grp., Inc.*,
  140 Cal. Rptr. 3d 38 (Cal. Ct. App. 2012) ........................... 5, 25, 49, 50

*Peng v. First Republic Bank*,
  162 Cal. Rptr. 3d 545 (Cal. Ct. App.), *as modified* (Oct. 2,
  2013) ...................................................................................... 2, 23, 49

*Postmates Inc. v. 10,356 Individuals*,
   No. 2:20-cv-02873, 2021 WL 540155 (C.D. Cal. Jan. 19,
   2021) ............................................................................................ 66

*Pre-Paid Legal Servs., Inc. v. Cahill*,
   786 F.3d 1287 (10th Cir. 2015) ........................................................ 37

*Prod. & Maint. Emps.' Local 504 v. Roadmaster Corp.*,
   916 F.2d 1161 (7th Cir.), *opinion amended on denial of
   reh'g* (Nov. 14, 1990) ................................................................ 52, 61

*Pruett v. WESTconsin Credit Union*,
   998 N.W.2d 529 (Wis. Ct. App. 2023), *review denied by*
   9 N.W.2d 277 (Wis. 2024) ........................... 5, 25, 49, 50, 51, 52

*Russell v. Kohl's Dep't Stores, Inc.*,
   No. 5:15-cv-01143, 2016 WL 6694958 (C.D. Cal. Apr. 11,
   2016) ...................................................................................... 10, 11

*Scheurer v. Fromm Fam. Foods LLC*,
   863 F.3d 748 (7th Cir. 2017) .............................................................. 8

*Sharif v. Wellness Int'l Network, Ltd.*,
   376 F.3d 720 (7th Cir. 2004) ............................................................ 29

*Sink v. Aden Enters. Inc.*,
   352 F.3d 1197 (9th Cir. 2003) .................................................... 32, 35

*Stolt-Nielsen S.A. v. AnimalFeeds Int'l Corp.*,
   559 U.S. 662 (2010) ................................ 5, 11, 16, 28, 46, 52

*Thiele v. Merrill Lynch, Pierce, Fenner & Smith*,
   59 F. Supp. 2d 1067 (S.D. Cal. 1999) .............................................. 60

*Uhl v. Thoroughbred Tech. & Telecomms., Inc.*,
   309 F.3d 978 (7th Cir. 2002) ......................................................... 7, 8

*Viking River Cruises, Inc. v. Moriana*,
   596 U.S. 639 (2022) ......................................................................... 59

*Volt Info. Sciences, Inc. v. Bd. of Trs. of Leland Stanford
    Junior Univ.*,
    489 U.S. 468 (1989)............................................................................65

*Wallrich v. Samsung Elecs. Am., Inc.*,
    106 F.4th 609 (7th Cir. 2024) ............................2, 23, 27, 32, 33, 35, 41

*Webb v. Fin. Indus. Regul. Auth., Inc.*,
    889 F.3d 853 (7th Cir. 2018)................................................................7

*Wigod v. Wells Fargo Bank, N.A.*,
    673 F.3d 547 (7th Cir. 2012)........................................................3, 42

*Wis. Auto Title Loans, Inc. v. Jones*,
    714 N.W.2d 155 (Wis. Ct. App. 2006)....................................53, 54, 55

**Statutes**

9 U.S.C. § 4 ............................................2, 23, 26, 27, 28, 37, 39

9 U.S.C. § 16(a)(1)(B)...................................................................8

28 U.S.C. § 1332 ..........................................................................7

Cal. Civ. Code
    § 1780(e) ...................................................................................8
    § 3513 ...............................................................................62, 65

Cal. Civ. Proc. Code
    § 1281.97 ..............................................................25, 63, 64, 65
    § 1281.97(a)(1)...........................................................................6
    §1281.97(b)(1)..........................................................................66
    § 1281.97(b)(2)..................................................................6, 8, 66

**Other Authorities**

16 C.F.R. § 233.1(a) ....................................................................10

16 C.F.R. § 233.5 ........................................................................10

Fed. R. Civ. P. 23(b)(3) ...............................................................57

H.R. Rep. No. 96, 68th Cong., 1st Sess., 1 (1924) .................................. 45

Restatement (Second) of Contracts
    § 77 (1981) ................................................................... 42
    § 279 (1981) ................................................................. 60

S.B. 707, 2019-2020 Reg. Sess. (Cal. Oct. 13, 2019)
    § 1(c) ......................................................................... 63
    § 1(d) ......................................................................... 63

3 Williston on Contracts § 7:7 (4th ed. 2008) ........................................ 4

## INTRODUCTION

The national retailer Kohl's promised its online customers to resolve disputes through bilateral arbitration with the American Arbitration Association ("AAA"). Ana Bernal, Amiee Marquez, Patricia Juarez, and Clara Roa ("Appellants") are four of 54,495 Kohl's customers who used this process. Each made purchases from Kohl's website based on false discounts tied to inflated reference prices. Each followed Kohl's terms by first notifying Kohl's of her claims, and later submitting an arbitration demand to the AAA.

Per the AAA's Consumer Arbitration Rules ("Rules"), which are part of Kohl's terms, the AAA only administers disputes after reviewing the parties' agreement for compliance with minimum standards of procedural fairness. The Rules give Kohl's the exclusive authority and responsibility to submit its arbitration agreement to the AAA for that review. Because Kohl's had not done so before Appellants filed their demands, the AAA gave Kohl's a week to submit its agreement for review and warned that if Kohl's did not do so, the AAA would be unable to administer the demands absent a court order. Kohl's decided not to submit its agreement for review and the AAA did not begin

administration.  Appellants then moved for an order to correct Kohl's noncompliance and to facilitate the AAA's administration.

The district court, misapplying *Wallrich v. Samsung Electronics America, Inc.*, 106 F.4th 609 (7th Cir. 2024) and misinterpreting the Rules, denied Appellants' motion.  For three reasons, this Court should reverse.

<u>*First*</u>, the district court had the obligation and authority to compel arbitration.  The Federal Arbitration Act ("FAA") provides that courts "shall make an order directing the parties to proceed to arbitration" when a business refuses to arbitrate despite drafting a binding written agreement to do so.  9 U.S.C. § 4.  At minimum, § 4 requires courts to order arbitration where the designated forum finds that a business violates the arbitral rules, directs the business to comply or face consequences, and invites judicial intervention to correct the business's noncompliance.

That is what happened here but not in *Wallrich*.  Kohl's refused to arbitrate, and the AAA said so.  The AAA found that Kohl's had not complied with the Rules and that Kohl's compliance was necessary for the AAA to begin administering Appellants' demands—or any future

disputes involving Kohl's.  The AAA invited judicial intervention, not to resolve the merits as the district court assumed, but to facilitate its administration of the arbitrations.  Unlike in *Wallrich*, the AAA never exercised any discretion because Kohl's noncompliance denied the AAA the chance to administer the arbitrations.  Another district court considering nearly identical facts recognized that extending *Wallrich* to these circumstances would eviscerate § 4.  *See Brooks v. WarnerMedia Direct, LLC*, No. 1:23-cv-11030, 2024 WL 3330305, at *6–7 (S.D.N.Y. July 8, 2024).  This Court should as well.

<u>Second</u>, although arbitration is fundamentally "a matter of contract," *Coinbase, Inc. v. Suski*, 602 U.S. 143, 145 (2024), the district court's ruling contravened foundational contract principles.  The district court interpreted the Rules to let a business decide, after a dispute arises, whether to honor its earlier contractual promise to arbitrate that dispute.  But that implies there was never a valid promise to arbitrate.  *See Wigod v. Wells Fargo Bank, N.A.*, 673 F.3d 547, 561 (7th Cir. 2012) ("Certainly, when the promisor conditions a promise on *his own* future action or approval, there is no binding offer.").  And courts should "avoid constructions of contracts that would render promises illusory because

such promises cannot serve as consideration for a contract." *M & G Polymers USA, LLC v. Tackett*, 574 U.S. 427, 440 (2015) (citing 3 Williston on Contracts § 7:7 (4th ed. 2008)).

Given that Congress enacted the FAA "in response to widespread judicial hostility to arbitration agreements," that rule of contract interpretation has special force here. *AT&T Mobility LLC v. Concepcion*, 563 U.S. 333, 339 (2011). But the district court's ruling ignored it by reading into the Rules a unilateral and unreviewable escape hatch for businesses, threatening the validity and enforceability of *every* AAA consumer arbitration agreement. The Rules are not so permissive, and nothing in the Rules or law bars a consumer from submitting a dispute over a business's noncompliance to court.

*Third*, none of Kohl's justifications for refusing to arbitrate raise a genuine issue of material fact. Kohl's made the understandable choice to block class actions by requiring bilateral AAA arbitrations instead. Appellants did what Kohl's required, seeking the same benefits of bilateral arbitration that Kohl's did when it imposed the agreement: lower costs, greater efficiency and speed, and the ability to choose expert

4

adjudicators. *Stolt-Nielsen S.A. v. AnimalFeeds Int'l Corp.*, 559 U.S. 662, 685 (2010).

Months later, Kohl's proposed modifications to the AAA arbitration agreement that Appellants viewed as degrading those benefits. Those proposed modifications were legally ineffective because they could not apply to Appellants' accrued claims, which Kohl's had known about—and mediated—for months pursuant to the existing agreement. *See, e.g.*, *Pruett v. WESTconsin Credit Union*, 998 N.W.2d 529, 533-34, 545-47 (Wis. Ct. App. 2023), *review denied by* 9 N.W.2d 277 (Wis. 2024); *Peleg v. Neiman Marcus Grp., Inc.*, 140 Cal. Rptr. 3d 38, 67 (Cal. Ct. App. 2012). Appellants also rejected Kohl's proposal by filing demands with the AAA under the existing agreement the same day Kohl's proposed the modifications. And Kohl's new agreement was not only both procedurally and substantively unconscionable, it was also such a departure from traditional arbitration that the FAA does not preempt state laws that make it unconscionable without resort to the standard analysis. *See Heckman v. Live Nation Ent., Inc.*, 120 F.4th 670, 689-90 (9th Cir. 2024) (FAA did not preempt state law invalidating consumer agreement

containing class waiver where agreement required something other than traditional, bilateral arbitration).

Finally, because Kohl's materially breached the AAA arbitration agreement, a California statute requires Kohl's to pay Appellants' attorneys' fees and costs in the compelled arbitrations. Cal. Civ. Proc. Code §§ 1281.97(a)(1), 1281.97(b)(2). Appellants are Californians who will arbitrate their claims in California and are thus entitled to the non-waivable protections of this statute, which California's legislature enacted for the primary purpose of conferring a public benefit. *See Azteca Constr., Inc. v. ADR Consulting, Inc.*, 18 Cal. Rptr. 3d 142, 148–49 (Cal. Ct. App.) (explaining that section 3513 of California's Civil Code bars waiver of such statutory protections), *as modified* (Sept. 9, 2004). Appellants invoke California law specifically to aid in enforcement of their arbitration agreements and, as such, the FAA does not preempt the imposition of sanctions here. *See, e.g.*, *Gallo v. Wood Ranch USA, Inc.*, 297 Cal. Rptr. 3d 373, 383–89 (Cal. Ct. App. 2022).

The Court should reverse and remand with instructions to grant Appellants' motion to compel arbitration.

## STATEMENT OF JURISDICTION

The district court had subject matter jurisdiction over the underlying action. 28 U.S.C. § 1332. Appellants are citizens of California, Appellee Kohl's Corporation is a citizen of Wisconsin, and Appellee Kohl's, Inc., is a citizen of Delaware and Wisconsin. 1-SA-052 (¶¶15–17).[1] The amount in controversy—excluding costs and interest, but including recoverable damages, attorneys' fees, expert fees, arbitration costs, and injunction compliance costs—exceeded $75,000 per Appellant. *See Webb v. Fin. Indus. Regul. Auth., Inc.*, 889 F.3d 853, 857 (7th Cir. 2018) ("Legal fees may count toward the amount in controversy if the plaintiff has a right to them 'based on contract, statute, or other legal authority.'" (citation omitted)); *Uhl v. Thoroughbred Tech. & Telecomms., Inc.*, 309 F.3d 978, 983 (7th Cir. 2002) ("[T]he cost to a defendant of complying with an injunction sought by the plaintiff may properly be considered in determining the amount in controversy."). To arbitrate their claims, each Appellant would incur attorney's fees, expert fees, arbitration fees, and other litigation costs that exceed $75,000, 1-

---

[1] "RSA-" is the Required Short Appendix. "__-SA" is the Separate Appendix by volume.

SA-025–28, which each Appellant could recover from Kohl's under California law. *See* Cal. Civ. Code § 1780(e); Cal. Civ. Proc. Code § 1281.97(b)(2). Each Appellant's request for public injunctive relief, which would force Kohl's to cure the estimated 8 to 17 percent premium it extracts whenever it uses false discounts, 1-SA-027 (¶6), independently satisfied the amount-in controversy requirement because the cost of compliance for Kohl's would exceed $75,000. *See Uhl*, 309 F.3d at 983.

This Court has appellate jurisdiction because the district court's September 13, 2024, order denying Appellants' motion to compel arbitration, RSA-001–08, was immediately appealable under 9 U.S.C. § 16(a)(1)(B). *See Scheurer v. Fromm Fam. Foods LLC*, 863 F.3d 748, 750 (7th Cir. 2017). Appellants timely noticed an appeal of that order on October 9, 2024. 2-SA-337–38.

## STATEMENT OF THE ISSUES

1. Whether the district court erred by holding that *Wallrich* overrode § 4's mandate to compel arbitration when doing so would have been consistent with the AAA's judgment.

2. Whether the district court erred by allowing Kohl's to condition its promise to arbitrate on its future compliance with Rule 12.

8

3.     Whether the drafter of a consumer arbitration agreement may refuse to arbitrate, and avoid statutory sanctions for breach, by proposing mid-dispute changes to the agreement and then asserting that the changes apply retroactively to known and accrued claims.

## STATEMENT OF THE CASE

### A.     For A Decade, Kohl's Defends Against Consumer Class Actions Accusing It Of False Advertising.

Appellees Kohl's Corporation and Kohl's, Inc. (collectively, "Kohl's") are the corporate entities behind a national retailer which offers products through its stores and website, Kohls.com. 2-SA-316 (¶2). Kohl's induces its customers to buy the products it offers by falsely advertising that they are on "sale" from an inflated original price at which Kohl's rarely or never offers those products. 1-SA-127–29. Kohl's also offers "promotions" and "incentives" that are in fact perpetual price reductions. *Id*. Federal regulations explain that such practices are deceptive:

> One of the most commonly used forms of bargain advertising is to offer a reduction from the advertiser's own former price for an article. If the former price is the actual, bona fide price at which the article was offered to the public on a regular basis for a reasonably substantial period of time, it provides a legitimate basis for the advertising of a price comparison. Where the former price is genuine, the bargain being advertised is a true one. If, on the other hand, the former price being advertised is not bona fide but fictitious—for

9

example, where an artificial, inflated price was established for the purpose of enabling the subsequent offer of a large reduction—the "bargain" being advertised is a false one; the purchaser is not receiving the unusual value he expects.  In such a case, the "reduced" price is, in reality, probably just the seller's regular price.

16 C.F.R. § 233.1(a); *see also* 16 C.F.R. § 233.5 ("advertisers should make certain that the bargain offer is genuine and truthful").

Throughout the 2010s, Kohl's litigated a spate of consumer class actions alleging that its practices violated various states' false advertising laws.  *See, e.g.*, *Hennessey v. Kohls Corp.*, No. 4:19-cv-01866, 2020 WL 870982 (E.D. Mo. Feb. 21, 2020) (denying in part Kohl's motion to dismiss Missouri class claims); *Russell v. Kohl's Dep't Stores, Inc.*, No. 5:15-cv-01143, 2016 WL 6694958 (C.D. Cal. Apr. 11, 2016) (granting plaintiff's motion for preliminary approval of agreement to settle California class claims); *Murillo v. Kohl's Corp.*, 197 F. Supp. 3d 1119 (E.D. Wis. 2016) (denying Kohl's motion to dismiss Wisconsin and multi-state class claims); *Le v. Kohl's Corp.*, 160 F. Supp. 3d 1096 (E.D. Wis. 2016) (denying Kohl's motion to dismiss Wisconsin, California, and multi-state class claims); *Hinojos v. Kohl's Corp.*, 718 F.3d 1098 (9th Cir.) (reversing dismissal of California class claims), *as amended on denial of reh'g and reh'g en banc* (July 8, 2013).  Putting aside the costs associated

with the day-to-day litigation of these cases, Kohl's also paid millions to settle them without admitting liability. *See, e.g.*, *Russell*, 2016 WL 6694958, at *2 ($6.15 million settlement).

**B.    To Avoid Class Actions, Kohl's Requires Customers To Arbitrate At The AAA And Agrees To Bear Most Costs.**

Naturally, a company facing many class actions wants to reduce related costs. One way to do so was by requiring each customer to agree to an adhesive contract waiving the right to class participation in favor of individualized arbitration of disputes. *See Concepcion*, 563 U.S. at 336, 351 (describing and permitting such agreements). "In bilateral arbitration, [both] parties forgo the procedural rigor and appellate review of the courts in order to realize the benefits of private dispute resolution: lower costs, greater efficiency and speed, and the ability to choose expert adjudicators to resolve specialized disputes." *See Stolt-Nielsen*, 559 U.S. at 685 (collecting cases). From the business's perspective, such agreements have the added benefit of reducing exposure by lowering incentives for individuals to pursue their claims in isolation. *Carnegie v. Household Int'l, Inc.*, 376 F.3d 656, 661 (7th Cir. 2004) (observing that companies suspect "[t]he *realistic* alternative to a class action is not 17 million individual suits, but zero individual suits").

Whatever their motivation, a business may impose bilateral arbitration on a consumer "so long as the prospective litigant effectively may vindicate its statutory cause of action in the arbitral forum." *See Am. Exp. Co. v. Italian Colors Rest.*, 570 U.S. 228, 235 (2013) (quoting *Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.*, 473 U.S. 614, 637 n.19 (1985)). This "effective vindication" principle has limited ambit: arbitration agreements cannot bar assertions of statutory rights outright or impose "filing and administrative fees attached to arbitration that are so high as to make access to the forum impracticable." *Id.* at 236 (citing *Green Tree Fin. Corp. v. Randolph*, 531 U.S. 79, 90 (2000)). Businesses requiring consumer arbitrations therefore select established arbitration providers like the AAA, which allocate most costs of arbitration to the business to ensure the enforceability of agreements and a minimum standard of procedural fairness. 2-SA-219–22 (describing AAA's costs of consumer arbitration).

After a decade of costly class action defense, Kohl's understandably chose to require its customers to waive their right to class participation in favor of bilateral arbitration. On November 3, 2020, Kohl's introduced

a consumer agreement ("2020 Terms") which contained the following

mandatory bilateral arbitration clause and class action waiver:

> You and Kohl's agree that any dispute, controversy, or claim
> arising out of, or relating to these Terms of Use, including
> without limitation any purchases, returns or other
> transactions that you engage in with Kohl's in-store, online,
> or through the mobile application . . . shall be resolved only by
> . . . final and binding bilateral arbitration. . . .

> All claims and disputes within the scope of this arbitration
> agreement must be arbitrated or litigated on an individual
> basis and not on a class basis.  Claims of more than one
> customer or user cannot be arbitrated or litigated jointly or
> consolidated with those of any other customer or user.

1-SA-067–68 (unnecessary capitalization omitted).  The 2020 Terms

required that the "party seeking arbitration must first notify the other

party of the Dispute in writing at least 30 days in advance of initiating

the arbitration."  1-SA-068.  They also specified that the "arbitration will

be conducted by the American Arbitration Association (AAA) under its

rules, including the AAA's Consumer Arbitration Rules."  *Id*.  The Rules

allocate most arbitration costs to Kohl's.  2-SA-219–22.  Kohl's also

agreed in the 2020 Terms that "[p]ayment of all filing, administration

and arbitrator fees will be governed by the AAA's rules" and that "Kohl's

will reimburse all such filing, administration and arbitrator fees for

claims totaling less than $10,000 unless the arbitrator determines the

claims are frivolous." 1-SA-068. Finally, the 2020 Terms provided that the consumer "may choose to have the arbitration conducted by telephone, based on written submissions, or in person in the county where [he or she] live[s]." *Id*.

Kohl's revised its terms on July 13, 2022 ("2022 Terms"), 1-SA-076–87, before Appellants notified it of any disputes, but these 2022 revisions made no changes to the 2020 Terms' AAA arbitration agreement. 1-SA-092-93 (redline reflecting no changes).

### C. Kohl's Continues Its False Advertising, Giving Rise To New Disputes Governed By The AAA Agreement.

Appellants are Kohl's customers from California who each had Kohls.com accounts and purchased products online from Kohl's between 2020 and 2022. 2-SA-246 (¶¶2-3); 2-SA-248 (¶¶2-3); 2-SA-250 (¶¶2-3); 2-SA-252 (¶¶2-3). When Appellants made those purchases, Kohl's notified them that by "placing [their] order[s], [they] agree[d] to Kohl's <u>Legal Notices</u>." 1-SA-054 (¶25). The words "<u>Legal Notices</u>" in that notification contained a hyperlink to a website featuring the AAA arbitration agreement within the 2020 Terms or the 2022 Terms, depending on the date of purchase. *Id*.

Kohl's did not dispute that its notification to Appellants during their 2020 through 2022 purchases from Kohls.com led to the formation of valid AAA arbitration agreements. *See, e.g.*, 2-SA-287 (characterizing AAA arbitration agreement as "Superseded Terms").

Despite facing at least a half-dozen class action lawsuits before it mandated arbitration, all of which put Kohl's on notice about the questionable legality of its advertising practices, Kohl's continued those practices on its website through 2022. *See, e.g.*, 1-SA-133–34. After becoming aware of their claims arising from these continued practices, but now bound by the AAA arbitration agreement, Appellants, like the thousands of other Kohl's customers represented by shared counsel, served notices of dispute on Kohl's on December 22, 2022. 1-SA-062 (¶7); 1-SA-112–23. The AAA arbitration agreement required that Kohl's customers serve these notices 30 days before filing a demand and "describe the nature of the claim and the relief being sought." 1-SA-068. Proceeding under the AAA arbitration agreement, Kohl's and the other customers then tried for several months to resolve their disputes informally, including through mediation. 1-SA-056 (¶33).

### D. By Filing AAA Demands, Appellants Reject Kohl's Mid-Dispute Effort To Modify The AAA Agreement.

On May 22, 2023, five months after it received Appellants' and others' notices of dispute and began negotiations pursuant to the AAA arbitration agreement, Kohl's posted a new proposed arbitration agreement to its website. 1-SA-061 (¶6); 1-SA-098–111. The proposal specified a new arbitration forum, National Arbitration and Mediation. 1-SA-103. Although the existing AAA arbitration agreement allowed unilateral changes, 1-SA-077 ("Kohl's reserves the right to update or modify these Terms of Use at any time, without prior notice"), it was silent as to whether those changes would apply to preexisting disputes. The proposed agreement nevertheless purported to apply to Appellants' preexisting disputes. 1-SA-102 (defining arbitrable disputes to include those that "arose . . . out of a prior agreement with Kohl's (including, without limitations, claims relating to advertising)"). It also proposed procedural changes that Appellants viewed as impairing the "lower costs" and "greater efficiency and speed," *Stolt-Nielsen*, 559 U.S. at 685, that arbitration is supposed to provide:

- Rather than submitting the issue to an arbitrator as the Rules provide by default, customers would have to go to court every time they believed an issue to be arbitrable but Kohl's did not. 1-SA-102

("issues relating to the scope, validity, and enforceability of the Arbitration Agreement or . . . relating to the arbitrability of any Dispute [or] . . . whether the arbitration administrator cannot or will not administer the arbitration . . . are **for a court of competent jurisdiction to decide**").

- Customers would have to surmount new procedural hurdles *before* arbitration, including by restarting a "mandatory pre-arbitration informal dispute resolution" process that lasted for 60 days and submitting a notice featuring more detail than the AAA required to file an arbitration demand. *Compare* 1-SA-102 (requiring notice to include specific transactions, a "detailed description" of claims, a "detailed calculation of any damages," and a personal signature by the claimant) *with* 2-SA-197–98 (Rule 2(a)(1)) (requiring that a demand "[b]riefly explain the dispute," "[s]pecify the amount of money in dispute," and "[s]tate what the claimant wants").

- Once the matters proceed beyond that pre-arbitration process, if more than 25 persons are raising similar claims at the same time, some customers must wait as Kohl's arbitrates 100 other claims, mediates, arbitrates another 100 claims, and mediates again. 1-SA-104. If mediation fails, the customers who are still waiting lose the right to arbitrate and must go to court. *Id.*

Kohl's did not notify any of the Appellants about its proposed changes until the following month. 2-SA-246 (¶5); 2-SA-248 (¶5); 2-SA-250 (¶5); 2-SA-252 (¶5). But in any event, Appellants rejected Kohl's proposed changes by filing AAA arbitration demands the same day that Kohl's posted the proposal to its website. 1-SA-062 (¶8); 1-SA-124–2-SA-179. Each Appellant specified California as the locale of her arbitration in her AAA demand. 1-SA-062 (¶8).

### E.    Rule 12 And The AAA Require Kohl's To Submit The AAA Agreement For Review, But Kohl's Refuses.

The Rules the parties incorporated into the AAA arbitration agreement state that when "parties have provided for the AAA's rules or AAA administration as part of their consumer agreement" they have made "AAA administration of the consumer arbitration . . . an essential term of their consumer agreement." 2-SA-195 (Rule 1(a)). But the AAA only "administers consumer disputes that meet the due process standards contained in the [Rules] and the *Consumer Due Process Protocol*." 2-SA-196 (Rule 1(d)). To ensure that agreements meet those standards, the AAA encourages businesses to "notify the AAA of the existence of such a consumer contract or of its intention to do so at least 30 days before the planned effective date" and "provide the AAA a copy of the arbitration agreement." 2-SA-202 (Rule 12). The AAA then "review[s] the agreement for material compliance with due process standards" and charges a "nonrefundable fee to conduct this initial review and maintain a publicly-available clause registry." *Id*. That fee is $500 on an annual basis. 2-SA-222 (Consumer Clause Review and Registry Fee).

"If a business does not submit its arbitration agreement for review and a consumer arbitration is then filed with the AAA, the AAA will conduct an expedited review at that time" with the business "responsible for paying the nonrefundable review and Registry fee." 2-SA-202 (Rule 12). That expedited review costs the business an "additional $250 fee." 2-SA-222 (Consumer Clause Review and Registry Fee).

Finally, if "the AAA declines to administer a case due to the business's non-compliance with this notification requirement, the parties may choose to submit their dispute to the appropriate court." 2-SA-203 (Rule 12). Likewise, the Rules provide generally that where the AAA "decline[s] to administer an arbitration, either party may choose to submit its dispute to the appropriate court for resolution." 2-SA-196 (Rule 1(d)). Neither the Rules nor the AAA arbitration agreement limit or specify the scope of the "dispute" a party may submit to a court upon the AAA's decision to decline administration, nor do they provide that the AAA's decision to decline administration is final or unreviewable. *See generally* 2-SA-187–230; 1-SA-079–81.

On June 7, 2023, the AAA acknowledged receiving Appellants' demands and 54,491 other Kohl's customers' demands, noting that the

AAA arbitration agreement attached to those demands "provides for administration by the AAA." 2-SA-181. But per Rule 12, Kohl's had not notified the AAA of the existence of the agreement at the time. *Id*. So, the AAA advised:

> Prior to the filing of these arbitrations, Kohl's *failed to comply* with the AAA's policies regarding consumer claims, set forth in the Consumer Due Process Protocol ("Protocol") and the Consumer Arbitration Rules ("Consumer Rules"), including the Costs of Arbitration, which can be found on our web site, www.adr.org.
>
> Due to Kohl's prior non-compliance, in order for the AAA to consider accepting these consumer disputes, *as well as disputes going forward*, Kohl's must advise the AAA of its intention to comply with the AAA's Consumer Rules and Protocol and, if applicable, resolve[] any outstanding payment obligations. Kohl's, at a minimum, must register its arbitration clause that names the AAA on the Consumer Clause Registry on our website, https://apps.adr.org/ ClauseRegistry. Upon completion of the registration process and confirmation from the AAA that Kohl's is now active on the Consumer Clause Registry, along with the parties' completion of the AAA filing requirements, the AAA will begin to proceed with the administration of these cases.

*Id.* (emphases added). Put succinctly, the AAA told the parties that it could not even start administering Appellants' cases unless Kohl's corrected its "prior non-compliance" with the Rules. *Id*. The AAA did not give Appellants the option of submitting the AAA arbitration agreement for review instead of Kohl's; however, it noted that each demand attached

20

a copy of the agreement Appellants said applied. *Id.* And the AAA, acknowledging its inability to order Kohl's to comply, noted that if Kohl's did "not comply, *absent a court order*, the AAA will be unable to provide arbitration administration." *Id.* (emphasis added).

Instead of "advis[ing] the AAA of its intention to comply with the AAA's Consumer Rules" as the AAA instructed, 2-SA-181, Kohl's decided *not* to comply. Soon after sending the initial letter, the AAA confirmed Kohl's deliberate noncompliance as the reason it could not begin administration:

> Please note that because Kohl's has confirmed they will not register their consumer arbitration agreement on the Consumer Clause Registry and because Kohl's has previously not complied with our Consumer Arbitration Rules ("Rules") and Consumer Due Process Protocol ("Protocol"), we decline to administer the cases filed by claimants against Kohl's on May 22, May 23, and May 26, 2023.

2-SA-184. The AAA refunded the $192,325 in fees Appellants and the other customers had paid to initiate administration. *Id.*

## F. Appellants Submit The Dispute Over Kohl's Refusal To Comply With Rule 12 To Court, As The AAA Suggested.

Recall that the AAA advised—consistent with the absence of any limitation in the Rules about the scope of the dispute a party could submit to court after the AAA declined administration—that it could still

administer the arbitrations with a "court order." 2-SA-181. Appellants therefore moved the district court for an order compelling arbitration to resolve the dispute over Kohl's noncompliance with Rule 12. 1-SA-050–60; 2-SA-253–54; 2-SA-255–78; 2-SA-320–36.[2] Kohl's opposed, based on its negative view of Appellants' strategy and its conviction that its mid-dispute effort to change the AAA arbitration agreement had been effective. *See generally* 2-SA-279–315.

Without addressing the core arguments the parties briefed, the district court denied Appellants' motion. RSA-001–08. It assumed that the AAA arbitration agreement applied, RSA-004 n.2, but then held—without exploring the AAA's rationale for declining administration or its invitation to submit the dispute over Kohl's Rule 12 noncompliance to court—that *Wallrich* deprived the court of authority to compel arbitration. RSA-007–08. Ignoring that Appellants preferred arbitration over litigation—just as Kohl's did in imposing the AAA arbitration agreement in the first place—the district court read Rule 12 to authorize

---

[2] Appellants originally filed their petition in the Central District of California, 1-SA-017–24, but that court transferred the matter to the Eastern District of Wisconsin, 1-SA-029–35. Appellants then filed an amended petition. 1-SA-050–60.

Kohl's "refus[al] to register its arbitration agreement and pay the requisite fees." RSA-008. Appellants took this appeal. 2-SA-337–38.

## SUMMARY OF ARGUMENT

The Court should reverse with instructions to grant Appellants' motion to compel arbitration for three reasons.

*First*, Kohl's refused to honor its own binding written agreement to arbitrate, meaning the district court had the statutory obligation to compel Kohl's to do so. 9 U.S.C. § 4. *Wallrich* does not require a different result. There, the AAA administered the parties' arbitration and proposed different ways to resolve a fee dispute. 106 F.4th at 620. When the parties rejected those proposals and the AAA terminated proceedings "within its discretion," the arbitration "was complete, and the district court did not have the authority" to compel further arbitration. *Id*. Here, by contrast, the AAA complained that it could not even *start* administering arbitrations without a court order given Kohl's deliberate noncompliance with the Rules. 2-SA-181; 2-SA-184. Put differently, ordering arbitration as § 4 required would have aided, not circumvented, the AAA's interpretation and application of the Rules. The district court missed this distinction, extending *Wallrich*'s fact-bound holding to

situations where a business blocks the arbitration provider from taking any action at all.  If allowed to stand, the district court's ruling would obliterate § 4.

*Second*, the district court's ruling ignored foundational principles of both contract interpretation and the FAA, leading to an absurd result. The district court effectively interpreted Rule 12 to allow a business to condition its promise to arbitrate on its post-dispute consent.  RSA-007–08.  But courts must avoid construing promises in ways that would render them illusory because such promises cannot be the basis for valid contracts.  *See Tackett*, 574 U.S. at 440.  That principle applies especially in the arbitration context, as Congress passed the FAA to end judicial hostility towards the enforcement of arbitration agreements.  *See Concepcion*, 563 U.S. at 339.  The district court, however, went out of its way *not* to enforce a valid arbitration agreement.  The Rules do not, as the district court assumed, RSA-007–08, require that a party submit only the *merits* dispute to court upon the AAA's declination decision.  As the AAA itself stated, Appellants had the right to submit their dispute over Kohl's noncompliance with Rule 12 to court, and nothing in the Rules or law says otherwise.

*Third*, Kohl's justifications for refusing to arbitrate lack legal merit and do not justify an escape from statutory sanctions. Kohl's drafted and imposed the AAA arbitration agreement. Appellants followed that agreement, seeking the same well-established benefits that Kohl's saw in requiring individual arbitrations. That Kohl's later posted a new agreement to its website specifying a different arbitral tribunal and new procedures carries no legal significance. The unilateral modifications do not apply to accrued claims known to Kohl's. *Pruett*, 998 N.W.2d at 545-47; *Peleg*, 140 Cal. Rptr. 3d at 67 ("A unilateral modification provision that is silent as to whether contract changes apply to claims, accrued or known, is impliedly restricted by the covenant so that changes do not apply to such claims."). Moreover, Kohl's new procedures were unconscionable under traditional contract analysis, but also so radical a departure from traditional, bilateral arbitration that they lost FAA protection. *See Heckman*, 120 F.4th at 689-90. Additionally, because Kohl's breached the AAA arbitration agreement by refusing to pay fees associated with Rule 12 compliance, California law mandates sanctions, which promotes arbitration by helping consumers like Appellants enforce their arbitration agreements. Cal. Civ. Proc. Code § 1281.97.

## STANDARD OF REVIEW

This Court "review[s] a district court's ruling on a motion to compel arbitration de novo." *A.D. v. Credit One Bank, N.A.*, 885 F.3d 1054, 1059 (7th Cir. 2018) (citation omitted). "Any findings of fact underlying that decision are reviewed for clear error." *Id*.

## ARGUMENT

The Court should reverse because the district court (1) avoided its statutory obligation to compel arbitration by misapplying *Wallrich*, (2) misconstrued the Rules to grant businesses the unfettered ability to break their promises to arbitrate disputes, and (3) missed that Kohl's excuses for refusing to arbitrate were invalid as a matter of law, warranting statutory sanctions.

## I.   Section 4 Required The District Court To Compel Arbitration.

Each Appellant had a valid written agreement with Kohl's to arbitrate virtually all disputes before the AAA.   1-SA-079–81. Appellants' false discount claims against Kohl's fell within the scope of the agreement.   1-SA-080.  By choosing not to submit its AAA arbitration agreement to the AAA for review as Rule 12 required and as the AAA instructed, Kohl's refused to arbitrate.  Appellants moved the district

court to remedy that refusal because the FAA "was intended to make arbitration agreements specifically enforceable . . . upon the terms established by the parties." *Dickinson v. Heinold Sec., Inc.*, 661 F.2d 638, 645 (7th Cir. 1981) (citation omitted), *abrogated on other grounds by Dean Witter Reynolds, Inc. v. Byrd*, 470 U.S. 213 (1985). And the text of § 4 "leaves no place for the exercise of discretion by a district court, but instead mandates that district courts *shall* direct the parties to proceed to arbitration on issues as to which an arbitration agreement has been signed." *Byrd*, 470 U.S. at 218 (citing 9 U.S.C. § 4).

In exercising discretion to deny the motion nevertheless, the district court erred. *Wallrich* and similar cases hold only that claimants cannot seek § 4 relief that would override the arbitration provider's considered judgment in interpreting and applying its own rules. Extending *Wallrich* to this case—where the AAA found that Kohl's violated the Rules, threatened Kohl's with future consequences, cited Kohl's noncompliance as the reason it could not begin administration, and invited a corrective court order to facilitate administration—would abrogate § 4.

## A.     Appellants Met The Requirements For § 4 Relief.

"[T]he Federal Arbitration Act evinces a 'national policy favoring arbitration.'" *A.D.*, 885 F.3d at 1059 (quoting *Concepcion*, 563 U.S. at 346). "Whenever possible, the courts will use the [FAA] to enforce agreements to arbitrate." *Galt v. Libbey-Owens-Ford Glass Co.*, 376 F.2d 711, 714 (7th Cir. 1967). Where one party to an arbitration agreement breaches, the non-breaching party has "an election to put an end to the arbitration clause or to insist upon its performance." *Id.* If the non-breaching party "has insisted upon performance, [] its election must be honored." *Id.* (citation omitted). Consumers, like businesses, are entitled to seek arbitration's established benefits. *See Stolt-Nielsen*, 559 U.S. at 685 (noting that "parties forgo" court review "to realize the benefits of private dispute resolution").

Section 4 of the FAA codifies the nonbreaching party's right to specific performance in the arbitration context by requiring that "upon being satisfied that the making of the agreement for arbitration or the failure to comply therewith is not in issue, the court *shall* make an order directing the parties to proceed to arbitration in accordance with the terms of the agreement." 9 U.S.C. § 4 (emphasis added). That language

requires that "if the parties have an arbitration agreement and the asserted claims are within its scope, the motion to compel cannot be denied." *Sharif v. Wellness Int'l Network, Ltd.*, 376 F.3d 720, 726 (7th Cir. 2004) (citing *Kiefer Specialty Flooring, Inc. v. Tarkett, Inc.*, 174 F.3d 907, 909 (7th Cir. 1999)).

A movant seeking to compel arbitration under § 4 must show three things: "a written agreement to arbitrate, a dispute within the scope of the arbitration agreement, and a refusal to arbitrate." *Gupta v. Morgan Stanley Smith Barney, LLC*, 934 F.3d 705, 715 (7th Cir. 2019). "In cases with no factual disputes, the district court decides the issue as a matter of law." *Domer v. Menard, Inc.*, 116 F.4th 686, 694 (7th Cir. 2024). There were no relevant factual disputes here and Appellants' § 4 motion met all three elements.

### 1.   The parties had a valid written agreement to arbitrate.

Kohl's and Appellants validly entered the AAA arbitration agreement. When Appellants made purchases from Kohl's website in 2020, 2021, and 2022, they formed with Kohl's the AAA arbitration agreement contained in the 2020 Terms and 2022 Terms, which were prominently hyperlinked in sales prompts. *See Domer*, 116 F.4th at 694-

95 (explaining that consumers may agree to online terms if they take conspicuous action that manifests assent after receiving reasonably conspicuous notice). Kohl's never disputed the formation of the AAA arbitration agreements below, instead contending only that its proposed modifications to the AAA arbitration agreement controlled.[3] *See, e.g.*, 2-SA-286–88. Indeed, Kohl's has correctly argued elsewhere that the same process through which Appellants and Kohl's entered the AAA arbitration agreement supported contract formation. *See Hennessey v. Kohl's Corp.*, 571 F. Supp. 3d 1060, 1070–71 (E.D. Mo. 2021).

## 2. The disputes fell within the scope of the agreement.

"Once the parties 'have a contract that provides for arbitration of some issues between them, any doubt concerning the scope of the arbitration clause is resolved in favor of arbitration as a matter of federal law.'" *Domer*, 116 F.4th at 700 (quoting *Gore v. Alltel Commc'ns, LLC*, 666 F.3d 1027, 1032 (7th Cir. 2012)). There are no doubts here. The AAA arbitration agreement contained a capacious arbitration clause, which required arbitration of "disputes," defined as:

---

[3] That argument was incorrect as a matter of law. *See* Section III, *infra*.

any claims or controversies between you and Kohl's that are related in any way to these Terms of Use, including but not limited to your use of this website, sales, returns, refunds, cancellations, defects, policies, privacy, advertising, and/or any communications between you and Kohl's, whether occurring on this website, in the mobile application, or in-store, even if the Dispute arises after the termination of your relationship with Kohl's.

1-SA-080. Appellants' false advertising claims fall within this definition.

### 3. Kohl's refused to arbitrate by breaching the agreement.

The last element of a successful § 4 motion is a "refusal to arbitrate." *Gupta*, 934 F.3d at 715. Courts traditionally recognized that a business's failure to fulfill the basic prerequisites of its own arbitration agreement constitutes a material breach. *See, e.g.*, *Eliasieh v. Legally Mine, LLC*, No. 3:18-cv-03622, 2020 WL 1929244, at *5 (N.D. Cal. Apr. 21, 2020) (because Defendant's refusal to comply with the AAA's instructions following a Rule 12 compliance review "resulted in termination of arbitration proceedings, Defendant is in material breach of the arbitration agreement"); *Freeman v. SmartPay Leasing, LLC*, 771 F. App'x 926, 933 n.4 (11th Cir. 2019) ("SmartPay breached the arbitration agreement when it refused to pay" fees as JAMS instructed); *Brown v. Dillard's, Inc.*, 430 F.3d 1004, 1010 (9th Cir. 2005) ("Dillard's

31

refus[al] to participate in the arbitration process at all" was a "breach of its obligations under the arbitration agreement"); *Sink v. Aden Enters., Inc.*, 352 F.3d 1197, 1201 (9th Cir. 2003) ("Aden's failure to pay required costs of arbitration was a material breach of its obligations in connection with the arbitration.").

The district court itself described Kohl's conduct as a "refus[al] to register its arbitration agreement and pay the requisite fees." RSA-008. But the district court avoided taking a position on whether that conduct was a refusal to arbitrate under § 4, holding that it lacked authority to compel arbitration under *Wallrich*. RSA-007–08. For the same reasons *Wallrich* does not control, however, Kohl's *did* refuse to arbitrate and § 4 therefore required the Court to compel arbitration.

### B. *Wallrich* Does Not Compel A Different Result.

#### 1. The district court misapplied *Wallrich*.

The district court based its denial of Appellants' motion on an overreading of *Wallrich*. RSA-004–08. In *Wallrich*, claimants sought to arbitrate, but Samsung, disputing the claims, refused to pay its share of initiation fees. 106 F.4th at 614. The parties had "bargained for the AAA's discretion over the payment of administrative filing fees, including the consequences that would stem from a party's refusal to pay those

fees." *Id*. at 620.  While administering the disputes, the AAA exercised that discretion, offering the claimants the choice to proceed with arbitration by advancing Samsung's fees.  *Id*.  The claimants declined that option and the AAA, without ever finding that Samsung violated the Rules or threatening future consequences, decided in its discretion to terminate the proceedings.  *Id*.  On those facts, the arbitrations were "complete" and the district court lacked authority to "disturb the AAA's judgment" by compelling more arbitration.  *Id*.; *see also Hoeg v. Samsung Elecs. Am., Inc.*, No. 24-1274, 2024 WL 3593896, at *1–2 (7th Cir. July 31, 2024) (reversing order compelling arbitration where the AAA resolved a fee dispute by offering claimants the chance to refile demands, but claimants instead filed a § 4 motion).

Unlike the § 4 motions in *Wallrich* and *Hoeg*, Appellants' § 4 motion was consistent with the AAA's judgment.  In *Wallrich*, the Court noted that if the AAA agreed with the claimants that Samsung was "abusing the arbitration process, it could have stayed the case or threatened to decline administering future consumer arbitrations with Samsung, but it did not."  106 F.4th at 622.  Here, however, the AAA agreed that Kohl's was refusing to arbitrate.

The AAA instructed Kohl's to submit the AAA arbitration agreement for expedited review because Kohl's "failed to comply" with the Rules. 2-SA-181. The AAA then threatened that given Kohl's "non-compliance, in order for the AAA to consider accepting these consumer disputes, *as well as disputes going forward*, Kohl's must advise the AAA of its intention to comply with" Rule 12 by registering its agreement and submitting the relevant registry and expedited review fees. *Id*. (emphasis added). Without such compliance, the AAA could not even "*begin* to proceed with the administration of these cases" except by "court order." *Id*. (emphasis added). And when Kohl's dismissed these warnings, the AAA reasoned that "because Kohl's has confirmed they will not register their consumer arbitration agreement . . . and because Kohl's has previously not complied with" the Rules, it had no choice but to decline administration. 2-SA-184.

That the AAA found Kohl's conduct violated the Rules and invited judicial intervention removes the *Wallrich* Court's animating concern, that an "order requiring the defendants to pay their share of the AAA filing fees represented an end-run around how the AAA had chosen to apply its own rules in administering the parties' dispute." *Brooks*, 2024

WL 3330305, at *7.  A court does not circumvent the AAA's judgment by ordering arbitration consistent with it.  *See id.*; *Edmondson v. Lilliston Ford Inc.*, 722 F. App'x 251, 252–55 (3d Cir. 2018).  For instance, the respondent in *Brooks*, like Kohl's, refused to comply with Rule 12.  2024 WL 3330305, at *4.  The AAA confirmed this violation, suggested judicial intervention, and implied its availability to administer disputes if a court action was successful.  *Id.* at *4, *7.  That is why, in *Brooks*, "an order compelling the parties to proceed to arbitration in accordance with the AAA's rules would not circumvent the AAA's interpretation and application of its own rules."  *Id.* at *7.  The same is true here, and this Court should therefore conclude, like the court in *Brooks*, that *Wallrich*'s "reasoning does not apply."  *Id.*

### 2.  The district court overread the limited legal principle that *Wallrich* expressed.

Kohl's breached its AAA arbitration agreement by choosing not to submit that agreement for review despite Rule 12's and the AAA's instructions.  *See Eliasieh*, 2020 WL 1929244, at *5; *Freeman*, 771 F. App'x at 933 n.4; *Brown*, 430 F.3d at 1010; *Sink*, 352 F.3d at 1201.  Section 4 provides parties aggrieved by such breach the choice between proceeding in court or compelling arbitration.  *Galt*, 376 F.2d at 714.

On such facts, appellate courts bless § 4 orders where compelling arbitration was consistent with the arbitration provider's pronouncements. *See, e.g.*, *Adams v. Postmates, Inc.*, 414 F. Supp. 3d 1246, 1250, 1255 (N.D. Cal. 2019) (compelling arbitration pursuant to § 4 where the AAA had "indicated that the arbitrations would move forward and that payment of the filing fees was expected," but leaving resolution of the fee dispute to the AAA), *aff'd,* 823 F. App'x 535 (9th Cir. 2020); *Edmondson*, 722 F. App'x at 252-55. In *Edmonson*, for example, a car dealership facing a customer's claim refused to register the parties' arbitration agreement with the AAA. 722 F. App'x at 253. As it did here, the "AAA noted that the arbitration clause had not been registered through its Consumer Clause Registry; it directed [the dealership] to register the arbitration clause, and to pay the associated registry and filing fees." *Id*. The dealership refused, claiming to have "severed ties" with the AAA. *Id*. The customer sought relief in court, which ordered the car dealership to show cause as to why the parties should not arbitrate before the AAA with the dealership paying costs as the Rules and the AAA required. *Id*. The dealership relented and registered its agreement. *Id*. In affirming the ensuing arbitration award, the Third

Circuit held that the district court had "properly 'direct[ed] the parties to proceed to arbitration in accordance with the terms of the agreement.'" *Id*. at 255 (alteration in original) (quoting 9 U.S.C. § 4).

By contrast, *Wallrich* and its progenitors constrain district courts only where a § 4 order compelling arbitration would disturb the arbitration provider's exercise of discretion and judgment. In both *Dealer Computer Services, Inc. v. Old Colony Motors, Inc.*, 588 F.3d 884, 886 (5th Cir. 2009), and *Lifescan, Inc. v. Premier Diabetic Services, Inc.*, 363 F.3d 1010, 1011 (9th Cir. 2004), as in *Wallrich*, the appellate courts reversed orders compelling arbitration because they disturbed the AAA's decisions to offer the movants the option to proceed in arbitration by advancing an opponent's share of the fees. And in *Pre-Paid Legal Services, Inc. v. Cahill*, 786 F.3d 1287, 1296–98 (10th Cir. 2015), and *Noble Capital Fund Management, L.L.C. v. US Capital Global Investment Management, L.L.C.*, 31 F.4th 333, 336 (5th Cir. 2022), the appellate courts reversed orders compelling arbitration because they disturbed the providers' decisions to close *ongoing* proceedings for failure to pay fees. In all four cases, as in *Wallrich*, litigation on the merits was the only option that would not disturb the providers' considered judgments. Not so here,

37

where the AAA could not start administration *because* Kohl's had "not complied with" the Rules, 2-SA-184, and invited Appellants to seek a court order to cure Kohl's noncompliance so that it could *begin* administration, 2-SA-181. That is what Appellants did. No case holds that courts may not enter § 4 orders *consistent* with the provider's statements and decisions.

### 3. This Court cannot speculate about how Kohl's or the AAA would handle compelled arbitrations.

No doubt, if the Court reverses with instructions to grant Appellants' motion, Kohl's might register its AAA arbitration agreement to comply with Rule 12, but then refuse to pay the fees to initiate arbitrations. At that point, the AAA will exercise its delegated authority in deciding how to proceed. Given its previous statements that Kohl's violated the Rules, the AAA should be inclined to proceed as it did in *Adams*, by requiring Kohl's to pay fees and leaving the proceedings open while claimants seek judicial intervention if Kohl's refuses. 414 F. Supp. 3d at 1250. Regardless, the Court "certainly cannot speculate about how the AAA would . . . ultimately handle[] [Kohl's] refusal to pay fees" if the Court were to reverse and require Kohl's to arbitrate as agreed. *See Hoeg*, 2024 WL 3593896, at *2.

Section 4 requires an order compelling arbitration pursuant to the AAA arbitration agreement. *Wallrich* does not excuse that requirement. The Court should reverse with instructions to grant Appellants' motion.

## II. The District Court Was Obligated To Avoid Construing Kohl's Promise To Arbitrate As Illusory.

Reversal is also warranted because the district court's holding calls into question the validity and enforceability (at least by consumers) of every AAA arbitration agreement that incorporates the Rules. Courts, however, must read arbitration contracts like any other, to "avoid constructions . . . that would render promises illusory." *Tackett*, 574 U.S. at 440. Courts must also honor the covenant of good faith and fair dealing implicit in every contract and the "overarching purpose of the FAA . . . to ensure the enforcement of arbitration agreements according to their terms." *Concepcion*, 563 U.S. at 344. The district court's reading of Rule 12—not as a registration requirement that Kohl's breached, but as a means for Kohl's to avoid its promise to arbitrate altogether—did none of these things.

### A. Rule 12 Is Not A License For Businesses To Escape AAA Consumer Arbitration.

The AAA arbitration agreement incorporates the Rules, which make "AAA administration of the consumer arbitration . . . an essential

39

term of the[] consumer agreement." 2-SA-195 (Rule 1(a)). The Rules provide that the AAA will administer disputes only pursuant to its own due process standards. 2-SA-196 (Rule 1(d)). The drafting business therefore must submit its agreement to the AAA for a compliance review. 2-SA-202–03 (Rule 12). The AAA encourages businesses to make this submission before any dispute arises but provides for procedures allowing a business to do so afterward as well. *Id.* The AAA charges a $500 annual fee to review and register a business's AAA agreement and a $250 expedited review fee if the business submits its agreement only after a dispute arises. 2-SA-222 (Consumer Clause Review and Registry Fee). The penalty for a business's failure to comply with these registration requirements is that the AAA will not administer arbitrations. 2-SA-203 (Rule 12); *see also* 2-SA-196 (Rule 1(d)).

The district court read this unremarkable registration requirement as something much broader. According to the district court, a business may—notwithstanding its earlier contractual promise to arbitrate—choose *not* to comply with Rule 12 if it wants to litigate rather than arbitrate. RSA-007–08. The business retains that option long after it has promised to arbitrate, indeed *after* an arbitrable dispute arises. *Id.*

Because Rule 12 requires a business, but not a consumer, to submit the arbitration agreement for review, that option is exclusive to the business. 2-SA-202–03 (Rule 12). And layering *Wallrich* on top, consumers have no ability to compel specific performance when a business exercises that exclusive option because § 4 also does not apply. RSA-007–08.

Ostensibly, all this results because Appellants gambled on Kohl's compliance with Rule 12's registration requirement. After all, Rule 12 specifies that the AAA will "decline to administer consumer arbitrations . . . where the business fails to pay the review and Registry fee" and the parties may subsequently "choose to submit their dispute to the appropriate court." *Id*. But the problem with that textual analysis is that neither the registration requirement in Rule 12 nor any other provision of the Rules impose limits on the scope of the "dispute" that a party may submit to the "appropriate court" upon the AAA's declination of administration. And as explained above, *see* Section I.B, *supra*, *Wallrich* and *Hoeg* impose no such limits here either.

The district court's strained contrary interpretation—that a business's deliberate breach of Rule 12's registration requirement excuses its performance altogether—would render the contract to

arbitrate disputes void from the outset. *See Wigod*, 673 F.3d at 561 (no

binding offer when promisor "conditions a promise on *his own* future

action or approval"); Restatement (Second) of Contracts § 77 cmt. a (1981)

("Words of promise which by their terms make performance entirely

optional with the 'promisor' do not constitute a promise."). Under the

district court's reading, the business's original promise to arbitrate was

expressly conditioned on its own future action and was therefore illusory:

> An illusory promise is a promise in form only: one that its
> maker can keep without subjecting him- or herself to any
> detriment or restriction. An archetypal example of an illusory
> promise is the statement that "I promise to do as you ask if I
> please to do so when the time arrives." A promisor can keep
> that promise by either doing as the promisee asks or not, and
> so the promisor maintains total freedom to do as he or she
> wants. Since the maker of an illusory promise assumes no
> detriment or obligation, an illusory promise is not regarded as
> consideration. If a party to a purported contract has, in fact,
> made only illusory promises and therefore not constrained
> him- or herself in any way, he or she has given no
> consideration and therefore no contract exists.

*Devine v. Notter*, 753 N.W.2d 557, 559 (Wis. Ct. App. 2008) (citations

omitted); *see also Chodos v. W. Publ'g Co.*, 292 F.3d 992, 996–97 (9th Cir.

2002) (describing same doctrine under California law and finding

unilateral termination right impliedly restricted by covenant of good

faith and fair dealing). Of course, Kohl's can't have intended that result,

42

having itself drafted and imposed the adhesive AAA arbitration agreement on its customers. Indeed, the parties assumed below that they *had* formed a valid arbitration agreement; they just disagreed over which one controlled. 2-SA-323–27.

Even if Kohl's had contested formation, courts must avoid reading binding promises out of contracts like the district court did here. *See Tackett*, 574 U.S. at 440. A business's promise to arbitrate means nothing if it can avoid that promise through its own subsequent choices. Courts have "no obligation to distort . . . the contract doctrine of consideration to treat an illusory promise as consideration." *Bertels v. Farm Bureau Prop. & Cas. Ins. Co.*, 123 F.4th 1068, 1082 (10th Cir. 2024). Thus, "in all contracts, the . . . terms must be construed so as to render none nugatory and avoid illusory promises." *Alday v. Raytheon Co.*, 693 F.3d 772, 784 (9th Cir. 2012) (citation omitted). Appellants' interpretation of Rule 12—as a registration requirement that does not limit the nature of the dispute submittable to court upon the AAA's declination of administration for noncompliance—accords with this canon. The district court's interpretation does not.

## B. Any Contrary Interpretation Subverts Both The Implied Covenant And The FAA.

Even if Kohl's reserved the unilateral and unreviewable right to avoid arbitration by refusing to comply with Rule 12, that right was constrained by the implied covenant of good faith and fair dealing. *Beidel v. Sideline Software, Inc.*, 842 N.W.2d 240, 250-51 (Wis. 2013) (under Wisconsin law, "every contract implies good faith and fair dealing between the parties to it" (citation omitted)); *Chodos*, 292 F.3d at 997 (same under California law). The covenant necessarily bars businesses from engaging in tactical manipulation.

Consider the result if the district court's contrary interpretation stands. Many businesses incorporate the Rules into consumer contracts designating the AAA as the arbitration provider. Any such business could wield the district court's ruling to funnel consumers with disputes to its preferred forum by (1) drafting and imposing an AAA arbitration agreement without notifying the AAA; (2) waiting until a dispute arises; and (3) choosing only then whether to arbitrate (by complying with Rule 12) or to litigate (by refusing to do so). Unless constrained by the covenant, a business could do so even if, as here, the AAA found that the

business violated Rule 12, instructed the business to comply, and threatened future non-administration.

More puzzlingly, the business could refuse to arbitrate even if, as here, the AAA specifically invited judicial intervention to correct the business's noncompliance. That is because, according to the district court, *Wallrich* abrogates the statutory right to specific performance codified in § 4 the moment the AAA declines administration—which, when a business breaches Rule 12, the AAA must do.

Barring reversal, a consumer faced with a business's breach of Rule 12 lacks any right to enforce his or her arbitration agreement. But Congress passed the FAA "to ensure judicial enforcement of privately made agreements to arbitrate." *Byrd*, 470 U.S. at 219. It "was motivated, first and foremost, by a congressional desire to enforce agreements into which parties had entered." *Id.* at 220 (quoting H.R. Rep. No. 96, 68th Cong., 1st Sess., 1 (1924)). The FAA thus "requires courts 'rigorously' to 'enforce arbitration agreements according to their terms, including terms that specify *with whom* the parties choose to arbitrate their disputes and *the rules* under which that arbitration will be conducted.'" *Epic Sys. Corp. v. Lewis,* 584 U.S. 497, 506 (2018) (quoting *Italian Colors*, 570 U.S.

at 233). "Whatever they settle on, the task for courts and arbitrators at bottom remains the same: 'to give effect to the intent of the parties.'" *Lamps Plus v. Varela*, 587 U.S. 176, 184 (2019) (quoting *Stolt-Nielsen*, 559 U.S. at 684).

Surely, the language of the AAA arbitration agreement and the Rules do not reflect an intent to subject claims to arbitration only at the business's exclusive election. The parties agreed to arbitration because of its speed and efficiency. *Stolt-Nielsen*, 559 U.S. at 685. Businesses may not force consumers to give up those benefits through intentional noncompliance with Rule 12. The Court should reverse.

## III. Kohl's Offered No Valid Justification For Its Refusal To Arbitrate, Warranting Statutory Sanctions.

Kohl's justification for its refusal to arbitrate before the AAA was that it successfully "updated" its arbitration agreement to apply retroactively, months after learning about Appellants' claims and negotiating with Appellants and other customers under the auspices of the AAA arbitration agreement. 2-SA-293–95. The district court did not analyze Kohl's justification, holding instead that *Wallrich* foreclosed § 4 relief assuming the AAA arbitration agreement applied. RSA-004 n.2. But Kohl's effort to modify the AAA arbitration agreement was invalid

as a matter of law because it violated the implied covenant of good faith and fair dealing under both California and Wisconsin law and because Appellants rejected Kohl's proposed modifications by filing their demands.

Even if the modifications were valid, the new agreement is unenforceable under a traditional unconscionability analysis. Both California and Wisconsin law also bar class action waivers in consumer contracts of adhesion, and the FAA does not preempt those laws because Kohl's proposed new procedures depart from the traditional form of bilateral arbitration that the FAA protects.

Finally, although Appellants cite Wisconsin law to demonstrate that it parallels California law in all material respects, Appellants are Californians who seek California arbitrations and are entitled to the non-waivable protections of California statutes. Because Kohl's justifications for its refusal to arbitrate fail as a matter of law, mandatory sanctions under California law are appropriate.

## A.    Kohl's Mid-Dispute Effort To Modify The AAA Arbitration Agreement Was Invalid.

### 1.    The law barred the modifications.

Kohl's learned about Appellants' and others' claims when it received notices of dispute in December 2022.  1-SA-062 (¶7); 1-SA-112–23.  Appellants sent those notices pursuant to the AAA arbitration agreement, which required pre-demand negotiations.  1-SA-080.  For five months, Kohl's engaged in those negotiations.  1-SA-056 (¶33).  Only after all that time did Kohl's post to its website, on May 22, 2023, proposed modifications to the AAA arbitration agreement.  1-SA-061 (¶6).  The proposed agreement purported to apply to preexisting disputes.  1-SA-102.  Kohl's only notified Appellants directly about those modifications the following month, long *after* Appellants filed and served notices of dispute under the AAA agreement.  2-SA-246 (¶5); 2-SA-248 (¶5); 2-SA-250 (¶5); 2-SA-252 (¶5).

The AAA arbitration agreement allowed Kohl's some leeway to make unilateral changes, 1-SA-077 ("Kohl's reserves the right to update or modify these Terms of Use at any time, without prior notice"), but was silent as to whether those changes would apply to preexisting disputes. In such circumstances, the implied covenant of good faith and fair dealing

restricts retroactive application of modifications to known and accrued claims. *See Pruett*, 998 N.W.2d at 545-47; *Peleg*, 140 Cal. Rptr. 3d at 67; *Cobb v. Ironwood Country Club*, 183 Cal. Rptr. 3d 282, 284 (Cal. Ct. App. 2015); *Peng v. First Republic Bank*, 162 Cal. Rptr. 3d 545, 553-54 (Cal. Ct. App.), *as modified* (Oct. 2, 2013).  And given the broad applicability of the implied covenant of good faith and fair dealing to all contracts, that rule applies in the consumer context.  *See Pruett*, 998 N.W.2d at 533-34; *Kim v. Allison*, 87 F.4th 994, 1001 n.7 (9th Cir. 2023) (citing *Cobb*, 183 Cal. Rptr. 3d at 286-87); *Heckman*, 120 F.4th at 683 (citing *Peleg*, 140 Cal. Rptr. 3d at 42).

Kohl's proposed modifications ran afoul of the implied covenant, which barred their retroactive application to Appellants' accrued claims that Kohl's had long known about.  *Pruett* is instructive.  In that case, a member filed a class action lawsuit against his credit union in July 2021 alleging claims arising from events in 2017 through 2020.  998 N.W.2d at 532-33.  The credit union defended by moving to compel arbitration, invoking April 2021 modifications to its membership agreement, and relying on a unilateral modification provision in the prior version of the agreement.  *Id.* at 533-34.  The modifications purported to apply

retroactively to accrued claims and to take effect if the member continued to interact with the credit union.  *Id*.  The court explained that these modifications were invalid because the credit union had not acted in "good faith" or made "the type of change contemplated by the parties." *Id*. at 545.  It was not "good faith" to "add a new term to the original Agreement seeking to retroactively deprive another party of a legal right" and so those terms were invalid.  *Id*.

*Peleg* further explains the rule.  There, the employee also challenged the retroactive application of contractual modifications based on a provision in the existing agreement that purported to give the employer a unilateral modification right.  140 Cal. Rptr. 3d at 45.  In sustaining the challenge, the court observed that the implied covenant expressly restricts unilateral modifications from applying to "claims, accrued or known." *Id*. at 59.  The purpose behind this rule was to prevent drafters from moving the procedural goalposts mid-dispute for their own benefit. *Id*. at 62-63.

The same logic applies here, where Kohl's sought to force Appellants to a new forum and to use new procedures when they were already five months underway addressing disputes under a different

agreement. Indeed, under Kohl's proposed agreement, Appellants would have had to serve new notices of dispute and engage in a new 60-day informal dispute resolution process. By Kohl's logic, it could avoid any dispute resolution process indefinitely by amending its terms to require a new process every time it receives notice of a dispute under its existing terms. That is the type of gamesmanship the implied covenant prohibits.

### 2.    Appellants' rejection barred the modifications.

In all events, Appellants rejected Kohl's proposed modifications by filing demands with the AAA under the existing agreement the same day Kohl's posted the proposed modifications to its website and *before* Kohl's provided notice of the modifications. 1-SA-062 (¶8); 1-SA-124–2-SA-179. That rejection was valid and precludes any argument that Appellants accepted Kohl's proposed modifications. *See Pruett*, 998 N.W.2d at 546. Acceptance of a modification must be "unequivocal"—it cannot rest on conduct that is "ambiguous" and "consistent either with the continued existence of the original contract, or with a modification." *Id*. (quoting *Nelsen v. Farmers Mut. Auto. Ins. Co.*, 90 N.W.2d 123, 134 (Wis. 1958)); *see also Berman v. Freedom Fin. Network, LLC*, 30 F.4th 849, 855 (9th Cir. 2022) ("To form a contract under . . . California law, the parties must

manifest their mutual assent to the terms of the agreement."); *Am. Bldg. Maint. Co. v. Indem. Ins. Co. of N. Am.*, 7 P.2d 305, 307 (Cal. 1932) ("the same elements essential to the validity of the original contract are essential to a modification thereof" (citation omitted)). As such, the credit union in *Pruett* could "not demonstrate [plaintiff's] consent" to the proposed changes "by his failure to opt out and by continuing to use his account." 998 N.W.2d at 549. Appellants did not ambiguously accept Kohl's proposed modifications; they unequivocally *rejected* those modifications by filing demands pursuant to the AAA arbitration agreement, weeks before Kohl's even gave them notice of the proposed changes.

That rejection had valid justification. "Arbitration will not work if legal contests are its bookends: a suit to compel or prevent arbitration, the arbitration itself, and a suit to enforce or set aside the award." *Prod. & Maint. Emps.' Local 504 v. Roadmaster Corp.*, 916 F.2d 1161, 1163 (7th Cir.), *opinion amended on denial of reh'g* (Nov. 14, 1990). Kohl's proposed changes invert this wisdom. The point of traditional, bilateral arbitration is to "lower costs" and gain "greater efficiency and speed." *Stolt-Nielsen*, 559 U.S. at 685. Yet Kohl's proposed modifications sought

to interpose repeated detours by requiring courts to resolve arbitrability disputes; creating a new, redundant, and onerous pre-dispute process; and imposing delay-inducing arbitration and mediation procedures where other customers bring similar claims in sufficient numbers.  1-SA-102–4.   Whatever Kohl's perception of Appellants' motivations, Appellants' rejection of these proposed modifications was well-warranted under established precedent.  That AAA arbitration may hold strategic benefits for Appellants is of no more significance than the fact that barring class actions had strategic benefits for Kohl's.

### B.   Even If Appellants Somehow Assented To Them, The New Terms Are Unconscionable And Unenforceable.

#### 1.   The new terms are procedurally and substantively unconscionable.

If Kohl's were to somehow prove that Appellants assented to the new agreement, that agreement would still be unconscionable and therefore unenforceable.  Under traditional unconscionability analysis in both California and Wisconsin, courts employ a sliding scale approach whereby the "more substantive unconscionability present, the less procedural unconscionability is required, and vice versa." *Wis. Auto Title Loans, Inc. v. Jones*, 714 N.W.2d 155, 165 (Wis. Ct. App. 2006); *see also OTO, L.L.C. v. Kho*, 447 P.3d 680, 690 (Cal. 2019).

53

Because Kohl's imposed the new agreement during negotiations over known and accrued claims, without any discussion or opportunity to negotiate, the new agreement was procedurally unconscionable. Procedural unconscionability "requires examining factors that bear upon the formation of the contract, that is, whether there was a 'real and voluntary meeting of the minds' of the contracting parties." *Jones*, 714 N.W.2d at 165-66 (citation omitted). The requirements of procedural unconscionability are "satisfied by a finding that the arbitration provision was presented on a take-it-or-leave-it basis and that it was oppressive due to 'an inequality of bargaining power that result[ed] in no real negotiation and an absence of meaningful choice.'" *Nagrampa v. MailCoups, Inc.*, 469 F.3d 1257, 1281 (9th Cir. 2006) (citation omitted) (alteration in original). There was no real and voluntary meeting of the minds when Kohl's decided unilaterally to change the dispute resolution procedures during an ongoing dispute with Appellants. Appellants perceived those changes as detrimental and had no input in them. The new agreement was procedurally unconscionable to a significant degree.

And the new agreement was also substantively unconscionable. It deterred Kohl's customers from vindicating their rights by depriving

them of the speed and efficiency of individualized arbitration.  Courts examining substantive unconscionability look to "whether the terms of a contract are unreasonably favorable to the more powerful party."  *Jones*, 714 N.W.2d at 166; *see also OTO, L.L.C.*, 447 P.3d at 690.  One aspect of this analysis in the arbitration context is whether the terms have "an *a priori* chilling effect" on consumers bringing claims.  *Pandolfi v. AviaGames, Inc.*, No. 3:23-cv-05971, 2024 WL 4051754, at *5 (N.D. Cal. Sept. 4) (collecting cases), *appeal filed*, No. 24-5817 (9th Cir. Sept. 24, 2024).  Kohl's new agreement reflects just such an effort to chill consumer claims by gaining "in arbitration some of the advantages of class-wide litigation while suffering few of its disadvantages."  *Heckman*, 120 F.4th at 677.

*Pandolfi* is on point.  That case involved a bellwether provision that "allow[ed] for arbitration of only twenty cases at a time," and the court reasoned that "there would likely be delay in resolution of the [consumers]' claims" considering that bellwether process.  2024 WL 4051754, at *6.  Here, Kohl's forces consumers bringing claims in any significant numbers to first wait 60 days, and then allows 100 arbitrations to proceed, and then forces participation in a mediation

session, and then allows another 100 arbitrations, and then forces participation in a second mediation session, before requiring all remaining consumers to resolve disputes in court. 1-SA-102–04. The intervening forced mediation sessions and the possible deprivation of any right to arbitration for claimants beyond the initial 200 warns of even more extreme delay than in *Pandolfi*, and therefore produces greater chilling effect on consumer claims. Other courts recognize comparable batch procedures as substantively unconscionable. *See MacClelland v. Cellco P'ship*, 609 F. Supp. 3d 1024 (N.D. Cal. 2022) (holding Verizon's procedures substantively unconscionable), *appeal dismissed by joint agreement*, No. 22-16020, 2024 WL 5290897 (9th Cir. Oct. 3, 2024); *Heckman*, 120 F.4th at 684-85 (holding Live Nation's procedures substantively unconscionable).

The delay alone creates a chilling effect that deters consumers from bringing small-value claims against Kohl's, but the bellwether provision has other problems, too, which the *Pandolfi* court also recognized. The bellwether provision in Kohl's new agreement, like the agreement in *Pandolfi*, is triggered when "25 or more similar Disputes (including yours) are asserted against Kohl's by the same or coordinated counsel."

1-SA-104.   This provision "has a built-in asymmetry, and with no apparent justification."   *See Pandolfi*, 2024 WL 4051754, at *7.   It is triggered when multiple consumers file claims against Kohl's, but not when Kohl's files multiple claims against a consumer.[4]   Furthermore, it is "troubling" that the "bellwether provision is triggered – causing delay – when" multiple claims are asserted "by the *same or coordinated* counsel," because "to avoid the bellwether provision, [consumers] would have to find different counsel, which affects the right to counsel of their choice or indeed, the ability to find any counsel at all:   where the individual claims are small (as consumer claims often are), it may be difficult to find an attorney who represents only a single or small number of similarly situated clients."   *Id.* at *11 (citing Fed. R. Civ. P. 23(b)(3)).   Kohl's unilaterally imposed the proposed agreement mid-dispute and included provisions that delay and deter smaller claims, rendering it procedurally and substantively unconscionable.

---

[4] And even if the provision were not facially asymmetric like it is, it would be asymmetric as a practical matter.   "While it is predictable that a [consumer] will have claims that will trigger the bellwether provision, it is far from clear that [Kohl's] would ever have claims that would trigger the provision.   That is, under what circumstances would twenty-five or more similar claims be asserted by [Kohl's] against a [consumer] that would warrant coordination?"   *Pandolfi*, 2024 WL 4051754, at *7.

**2.    The new terms are unconscionable because they provide for aggregative arbitration alongside a class waiver.**

As an "alternate and independent ground" for the unconscionability of Kohl's new terms, the application of California and Wisconsin laws against class waivers is not preempted by the FAA. *See Heckman*, 120 F.4th at 689-90.

Section 2 of the FAA "permits agreements to arbitrate to be invalidated by 'generally applicable contract defenses, such as . . . unconscionability.'" *Concepcion*, 563 U.S. at 339 (citation omitted). Both California and Wisconsin law hold that class waivers in consumer contracts of adhesion are unconscionable. In California, a class waiver renders unenforceable "a consumer contract of adhesion in a setting in which disputes between the contracting parties predictably involve small amounts of damages, and when it is alleged that the party with the superior bargaining power has carried out a scheme to deliberately cheat large numbers of consumers out of individually small sums of money." *Discover Bank v. Superior Ct.*, 113 P.3d 1100, 1110 (Cal. 2005). A Wisconsin appellate court expressed the same view. *Coady v. Cross Country Bank*, 729 N.W.2d 732, 746–47 (Wis. Ct. App. 2007) (explaining

that the "availability of class-wide relief is often the only means of vindicating consumer rights") (citing *Discover Bank*, 113 P.3d at 1109).

Those laws have limits. When class waivers are coupled with the requirement that parties engage in traditional, bilateral arbitration, state laws making class waivers unconscionable interfere with the FAA's objectives and are preempted. *See, e.g.*, *Concepcion*, 563 U.S. at 352; *Cottonwood Fin., Ltd. v. Estes*, 810 N.W.2d 852, 857–58 (Wis. Ct. App. 2012). Thus, Kohl's AAA arbitration agreement, which requires traditional, bilateral arbitration, is enforceable despite the general California and Wisconsin bars on class waivers.

Kohl's new agreement also contains a class action waiver, 1-SA-103, but it requires procedures far from "the prototype of the individualized and informal form of arbitration protected from undue state interference by the FAA." *Viking River Cruises, Inc. v. Moriana*, 596 U.S. 639, 656 (2022). "The Supreme Court has consistently disparaged the use of aggregation in arbitration." *Heckman*, 120 F.4th at 690 (collecting cases). "A switch from bilateral to aggregative arbitration 'sacrifices the principal advantage of arbitration—its informality—and makes the process slower, more costly, and more likely to generate procedural

morass than final judgment.'" *Id.* (quoting *Concepcion*, 563 U.S. at 348–49). Thus, aggregative methods of private dispute resolution are "not arbitration as envisioned by the FAA in 1925" and receive no FAA protection. *Id.* California or Wisconsin law rendering class waivers unconscionable "spring[] back to life in this context" and render Kohl's new agreement unconscionable and unenforceable without resort to the traditional procedural and substantive unconscionability analysis. *Id.* at 692 (VanDyke, J., concurring).

### 3.    The AAA arbitration agreement remains in place.

If Kohl's can show assent to the new terms, those terms are unconscionable and void. The AAA arbitration agreement thus remains in place. "[T]o the extent that the substituted contract is vulnerable on such grounds as . . . unconscionability, recourse may be had on the original duty." Restatement (Second) of Contracts § 279 cmt. b (1981); *accord Thiele v. Merrill Lynch, Pierce, Fenner & Smith*, 59 F. Supp. 2d 1067, 1071 (S.D. Cal. 1999) ("[W]hen a modification or substitution is void for failure to meet the requirements of a valid contract, then the modification or substitution is unenforceable and the prior contract is revived."); *Airs Int'l, Inc. v. Perfect Scents Distribs., Ltd.*, 902 F. Supp.

1141, 1148 (N.D. Cal. 1995) (observing that when a new version of a contract between parties is void, the prior version of the parties' contract becomes enforceable again).

### C. The Court Should Require Kohl's To Pay Appellants' Arbitration Fees And Costs Under California Law.

Appellants first noticed their disputes years ago.     "Reluctance to see the benefits of arbitration smothered by the costs and delay of litigation explains the increasing tendency of courts to order a party feebly opposing arbitration . . . to pay the winner's legal fees." *Roadmaster Corp.*, 916 F.2d at 1163.  "Anything less makes a mockery of arbitration's promise to expedite and cut the costs of resolving disputes." *Id*.

California's legislature provided a statutory remedy for such obstruction, which is non-waivable for California Appellants, who seek California arbitrations pursuant to the AAA arbitration agreement.  Nor is the statutory remedy—which promotes arbitration by aiding consumers seeking to enforce their arbitration agreements—preempted by the FAA.

### 1.    California law applies and requires sanctions.

Appellants are four Californians, each entitled to arbitrate with Kohl's under the AAA arbitration agreement "in the county where [she] live[s]." 1-SA-080.  In making her AAA demand, each Appellant specified California as the locale for her arbitration. 1-SA-061 (¶6).

"[A] law established for a public reason cannot be contravened by a private agreement."  Cal. Civ. Code § 3513.  Thus, California consumers cannot waive California statutory protections pertaining to arbitration where the public benefit of the statute is one of its primary purposes. *Azteca*, 18 Cal. Rptr. 3d at 148–49 (citing Cal. Civ. Code § 3513). "Because it imbues private arbitration with legal vitality by sanctioning judicial enforcement of awards, the state retains ultimate control over the 'structural aspect[s] of the arbitration' process."  *Id*. at 150 (alteration in original) (citation omitted).

California's decision to mandate sanctions to aid consumers seeking to arbitrate against recalcitrant businesses was an exercise of that ultimate control.  The relevant statute provides:

> (a)(1) In an employment or consumer arbitration that requires, either expressly or through application of state or federal law or the rules of the arbitration provider, the drafting party to pay certain fees and costs before the

arbitration can proceed, if the fees or costs to initiate an arbitration proceeding are not paid within 30 days after the due date, the drafting party is in material breach of the arbitration agreement . . . .

(b) If the drafting party materially breaches the arbitration agreement and is in default under subdivision (a), the employee or consumer may . . .

(2) Compel arbitration in which the drafting party shall pay reasonable attorney's fees and costs related to the arbitration.

Cal. Civ. Proc. Code § 1281.97. In enacting the bill that became this statute, California's legislature explained:

(c) A company's failure to pay the fees of an arbitration service provider in accordance with its obligations contained within an arbitration agreement or through application of state or federal law or the rules of the arbitration provider hinders the efficient resolution of disputes and contravenes public policy . . . .

(d) A company's strategic non-payment of fees and costs severely prejudices the ability of employees or consumers to vindicate their rights. This practice is particularly problematic and unfair when the party failing or refusing to pay those fees and costs is the party that imposed the obligation to arbitrate disputes.

S.B. 707, 2019-2020 Reg. Sess., §§ 1(c), 1(d) (Cal. Oct. 13, 2019); 2-SA-340–41. And before that, the California Senate Judiciary Committee explained the public benefit the legislature sought to confer:

Companies have been using arbitration agreements for years to prohibit employees and consumers from having their claims

63

heard in court or as a class action. With no other recourse left to adjudicate their claims, employees have begun filing individual arbitration claims, with one employer having over 12,000 individual claims filed against it. Some employers have been refusing to pay fees and costs required to initiate arbitration, effectively placing their employees in a procedural limbo. This bill is intended to affirm that these practices constitute material breach of an employment or consumer arbitration agreement and provide procedures for employees or consumers to pursue in order to have their claims heard in the event of such a breach.

2-SA-232.

All those public benefit rationales apply here. The AAA declined administration after finding that Kohl's had failed to comply with Rule 12, which required payment of review fees before the arbitration could proceed. 2-SA-181; 2-SA-184. These fees came due no later than June 7, 2023, when the AAA informed the parties they were due, 2-SA-181, and Kohl's still has not paid them well over 30 days later. Appellants thus sought to compel arbitration in which Kohl's pays their fees and costs. Sanctions are mandatory. Cal. Civ. Proc. Code § 1281.97. And Kohl's cannot credibly argue that Appellants waived these statutory rights through the AAA arbitration agreement because California's legislature passed section 1281.97 to provide clear public benefits and to dictate

structural aspects of the arbitration process in California. *Azteca*, 18 Cal. Rptr. 3d at 148-49 (citing Cal. Civ. Code § 3513).

### 2. The FAA does not preempt section 1281.97.

The FAA "contains no express pre-emptive provision, nor does it reflect a congressional intent to occupy the entire field of arbitration." *Volt Info. Sciences, Inc. v. Bd. of Trs. of Leland Stanford Junior Univ.*, 489 U.S. 468, 477 (1989). It simply says that states may not render arbitration agreements "[in]valid, [r]evocable," or "[un]enforceable" based on rules that uniquely disfavor arbitration. 9 U.S.C. § 2; *see also Kindred Nursing Ctrs., Ltd. P'ship v. Clark*, 581 U.S. 246, 248, 251 (2017). And section 1281.97 doesn't disfavor arbitration; it *encourages* arbitration by ensuring that proceedings continue despite a corporation's failure to honor its contractual obligations. The law ensures that consumers do not languish in "procedural limbo and delay" while the very company that forced them to arbitrate drags its feet. *Gallo*, 297 Cal. Rptr. 3d at 381–82. In other words, section 1281.97 secures the benefits of arbitration the FAA sought to promote and honors the intent of the parties, who agreed to arbitrate because they wanted to resolve their disputes efficiently.

California's courts of appeal have repeatedly rejected arguments to the contrary. *See Hohenshelt v. Superior Ct.*, 318 Cal. Rptr. 3d 475, 479-80 (Cal. Ct. App. 2024) (collecting cases), *review granted* 549 P.3d 143 (Cal. June 12, 2024). Federal district courts have as well. *Postmates Inc. v. 10,356 Individuals*, No. 2:20-cv-02873, 2021 WL 540155, at *6-10 (C.D. Cal. Jan. 19, 2021); *Agerkop v. Sisyphian LLC*, No. 2:19-cv-10414, 2021 WL 1940456, at *4-5 (C.D. Cal. Apr. 13, 2021). And courts that have gone the other way all did so based on section 1281.97(b)(1), not at issue here, which entitles consumers to *escape* arbitration in the event of a business's material breach. *See Hernandez v. Sohnen Enters., Inc.*, 321 Cal. Rptr. 3d 283, 301 (Cal. Ct. App.), *review granted*, 553 P.3d 866 (Cal. Aug. 21, 2024); *Belyea v. GreenSky, Inc.*, 637 F. Supp. 3d 745, 755-59 (N.D. Cal. 2022); *Lee v. Citigroup Corp. Holdings, Inc.*, No. 3:22-cv-02718, 2023 WL 6132959, at *2 (N.D. Cal. Aug. 29, 2023) (following *Belyea*). Appellants instead seek to *enforce* the AAA arbitration agreement through a separate provision of the statute. Cal. Civ. Proc. Code § 1281.97(b)(2).

## CONCLUSION

This Court should reverse the district court's order denying Appellants' motion to compel arbitration and remand with instructions to the district court to grant Appellants' motion.

Dated: February 13, 2025                Respectfully submitted,

                              By:  */s/ Kiran N. Bhat*
                              
                                   Kiran N. Bhat
                                        *Counsel of Record*
                                   KELLER POSTMAN LLC
                                   1101 Connecticut Avenue, N.W.
                                   Suite 1100
                                   Washington, DC 20036
                                   (202) 918-1123
                                   *kiran.bhat@kellerpostman.com*

                                   Ethan H. Ames
                                   KELLER POSTMAN LLC
                                   150 N. Riverside Plaza
                                   Suite 4100
                                   Chicago, IL 60606
                                   (312) 741-5220
                                   *ethan.ames@kellerpostman.com*

                                   Martin Woodward
                                   KITNER WOODWARD PLLC
                                   13101 Preston Road
                                   Suite 110
                                   Dallas, TX 75240
                                   (214) 443-4300
                                   *martin@kitnerwoodward.com*

                                   *Counsel for Petitioners-Appellants*

# CERTIFICATE OF COMPLIANCE

I certify that this brief complies with the type-volume limitation of Federal Rule of Appellate Procedure 32(a)(7)(B) and Circuit Rule 32(c) because, as calculated by Microsoft Word, it contains 13,316 words, excluding the parts of the brief exempted by Federal Rule of Appellate Procedure 32(f). I also certify that this brief complies with the typeface and type-style requirements of Federal Rule of Appellate Procedure 32(a)(5) and (6) because it has been prepared in a proportionally spaced typeface using Microsoft Word in a 14-point Century Schoolbook font.

Dated: February 13, 2025

*/s/ Kiran N. Bhat*
Kiran N. Bhat

*Counsel for Petitioners-Appellants*

## CIRCUIT RULE 30(d) CERTIFICATION

I certify that all materials required by Circuit Rules 30(a) and (b) are included in the Required Short Appendix and the Separate Appendix.

Dated: February 13, 2025          */s/ Kiran N. Bhat*
                                  Kiran N. Bhat

                                  *Counsel for Petitioners-Appellants*

# REQUIRED SHORT APPENDIX

## TABLE OF CONTENTS

Order, Dkt. 87 (E.D. Wis. Sept. 13, 2024)............................. RSA-001–08

# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF WISCONSIN

---

**ANA BERNAL, et al.,**
          **Petitioners,**

     **v.**                          **Case No. 23-cv-1542**

**KOHL'S CORPORATION, et al.,**
          **Respondents.**

---

### <u>ORDER</u>

Petitioners Ana Bernal, Amiee Marquez, Patricia Juarez, and Clara Roa have filed an amended[1] petition for an order compelling arbitration and a motion to compel arbitration. Petitioners move pursuant to Section 4 of the Federal Arbitration Act for a court order compelling the respondents, Kohl's Corporation and Kohl's Inc. ("Kohl's"), to submit to arbitration before the American Arbitration Association ("AAA") and an order compelling Kohl's to pay the fees associated with the arbitration. For the reasons stated below, petitioners' motion is denied.

### I. BACKGROUND

Petitioners are four individuals who reside in California and have purchased products from Kohl's through its website, kohls.com. Petitioners allege that Kohl's has engaged in false and deceptive marketing practices to induce them to purchase products, in violation of California law.

---

[1] Petitioners filed their initial petition for an order compelling arbitration in the District Court for the Central District of California. On November 17, 2023, District Court Judge Percy Anderson granted Kohl's motion to transfer venue and transferred the action to this court. *See* ECF No. 52.

To make a purchase on kohls.com, Kohl's requires its customers agree to its Terms & Conditions. These Terms & Conditions include a class action waiver and provide for binding arbitration of "all disputes." Petitioners made their purchases between December 2020 and October 2022, so each of them agreed to either the version updated as of November 3, 2020 ("2020 Terms & Conditions") or the version updated as of July 13, 2022 ("2022 Terms & Conditions"), or both. The arbitration agreement in the 2020 and 2022 Terms & Conditions states that arbitration "will be conducted by the American Arbitration Association (AAA) under its rules, including the AAA's Consumer Arbitration Rules as applicable," and that "[p]ayment of all filing, administration and arbitrator fees will be governed by the AAA's rules." ECF No. 55-1 at 5 (2020 Terms & Conditions); ECF No. 55-2 at 5 (2022 Terms & Conditions).

In December 2022, petitioners each served a Notice of Dispute on Kohl's, beginning the arbitration process outlined in the 2020 and 2022 Terms & Conditions. Along with the petitioners, approximately 10,000 other claimants (represented by the same counsel as petitioners) served their Notices of Dispute on Kohl's alleging similar claims. On April 10, 2023, Kohl's received 44,656 more Notices of Dispute containing similar allegations from additional claimants, also represented by petitioners' counsel. The parties participated in a mediation session on April 17, 2023, and subsequently continued settlement discussions.

Between May 22 and May 26, 2023, petitioners and 54,491 additional claimants filed their formal arbitration demands with AAA. Petitioners and the other claimants paid their share of the applicable filing fees. On June 7, 2023, the AAA sent the parties a letter stating that in order to proceed, Kohl's must register the arbitration agreement that

2

names the AAA as the arbitral forum on its Consumer Clause Registry and pay the associated registration fees. The letter further stated that:

> Upon completion of the registration process and confirmation from the AAA that Kohl's is now active on the Consumer Clause Registry, along with the parties' completion of the AAA filing requirements, the AAA will begin to proceed with the administration of these cases.
>
> . . . If the business does not comply, absent a court order, the AAA will be unable to provide arbitration administration to the parties to assist them in resolving their disputes.

ECF No. 55-13 at 2. Kohl's subsequently informed the AAA that it would not register their consumer arbitration agreement on the Consumer Clause Registry. In a letter dated June 20, 2023, the AAA informed the parties that due to Kohl's refusal to register the arbitration agreement and pay the fees associated with registration, it "decline[d] to administer the cases." ECF No. 55-14 at 2. The AAA closed the files and refunded all fees paid by the petitioners and the other claimants. *Id.*

Petitioners seek an order compelling Kohl's to submit to arbitration before the AAA pursuant to the arbitration agreements found in the 2020 and 2022 Terms & Conditions, specifically compelling Kohl's to register its arbitration agreement with the AAA and to pay the fees associated with doing so.

## II. DISCUSSION

The Federal Arbitration Act ("FAA"), 9 U.S.C. § 1, *et seq.*, mandates the enforcement of valid, written arbitration agreements. 9 U.S.C. § 2; *Circuit City Stores v. Adams*, 532 U.S. 105, 111–12 (2001). "A party aggrieved by the alleged failure, neglect, or refusal of another to arbitrate under a written agreement for arbitration" may petition a federal district court for an order directing that arbitration proceed in the manner

3

provided for in such agreement. 9 U.S.C. § 4. The court must compel arbitration where there is (1) an enforceable written agreement to arbitrate; (2) a dispute within the scope of the arbitration agreement; and (3) a refusal to arbitrate. *A.D. v. Credit One Bank, N.A.*, 885 F.3d 1054, 1060 (7th Cir. 2018).

Petitioner moves to compel arbitration pursuant to the AAA arbitration agreement in the 2020 and 2022 Terms & Conditions.[2] In light of the Seventh Circuit's recent decision in *Wallrich v. Samsung Electronics America, Inc.*, 106 F.4th 609 (7th Cir. 2024), I must deny the petitioners' motion to compel. In *Wallrich*, 49,986 Illinois-based consumers filed individual arbitration claims before the AAA, alleging that Samsung had unlawfully collected and stored sensitive biometric data through their electronic devices in violation of Illinois law. *Id.* at 614. The consumers paid their share of the initial administrative filing fees, and the AAA requested $4,125,000 from Samsung for its share of the initial fees. *Id.* Samsung, doubting the merits of the consumers' claims, refused to pay. *Id.* The AAA, in its discretion and in accordance with its rules, "offered the consumers the opportunity to advance Samsung's fees so that the arbitration could proceed, but [the consumers] declined." *Id.* at 614. The consumers requested that the AAA stay the arbitration proceedings until they could get an order compelling arbitration from a federal court. *Id.* The AAA denied the request for a stay, closed the arbitration

---

[2] Kohl's asserts that the arbitration agreement in the 2020 and 2022 Terms & Conditions has been superseded by its updated May 22, 2023, Terms & Conditions. The 2023 Terms & Conditions made several changes to the parties' arbitration agreement, including designating the National Arbitration and Mediation ("NAM")—not the AAA—as the arbitral forum for consumer disputes. Petitioners argue that they never agreed to the 2023 Terms & Conditions and seek to arbitrate pursuant to the AAA arbitration agreements. I need not consider which arbitration agreement applies, however, because even assuming that the agreement advanced by the petitioners controls, the motion to compel must be denied.

4

proceedings, and refunded the consumers' filing fees. *Id.* The consumers filed a petition to compel arbitration under § 4 of the FAA in federal court, seeking an order compelling Samsung to pay its AAA filing fees and to arbitrate the claims. *Id.* The district court found that an enforceable arbitration agreement existed between the parties and ordered Samsung to proceed to arbitration before the AAA and pay their share of the filing fees. *Id.*

The Seventh Circuit reversed, finding that the consumers did not meet their initial burden of proving the existence of a valid arbitration agreement with Samsung. *Id.* at 619. The court further concluded that "[e]ven if the consumers had met their evidentiary burden, the district court exceeded its authority and the scope of the arbitration agreement by ordering Samsung to pay the AAA filing fees." *Id.* at 620. The court noted that:

> The Supreme Court "has consistently held that parties may delegate threshold arbitrability questions to the arbitrator, so long as the parties' agreement does so by 'clear and unmistakable' evidence." *Henry Schein, Inc. v. Archer & White Sales, Inc.*, 586 U.S. 63, 69 (2019). Thus, "if a valid agreement exists, and if the agreement delegates the arbitrability issue to an arbitrator, a court may not decide the arbitrability issue." *Id.*; *see also Lamps Plus, Inc. v. Varela*, 587 U.S. 176, 184 (2019) ("Parties may generally shape such agreements to their liking by specifying with whom they will arbitrate, the issues subject to arbitration, the rules by which they will arbitrate, and the arbitrators who will resolve their disputes."). Additionally, procedural issues, like fee disputes, are "presumptively *not* for the judge, but for an arbitrator, to decide." *See Howsam v. Dean Witter Reynolds, Inc.*, 537 U.S. 79, 84 (2002) (emphasis in original).

*Id.* Considering this, the court concluded that "Samsung and the consumers proceeded through arbitration in the manner provided for in their agreement." *Id.* The arbitration agreement between the consumers and Samsung stated that administrative, facility, and arbitrator fees shall "be determined according to AAA rules." *Id.* at 613. Because

5

the arbitration agreement delegated threshold arbitration fee disputes to the AAA and its rules, "[t]he parties thus bargained for the AAA's discretion over the payment of administrative filing fees, including the consequences that would stem from a party's refusal to pay those fees." *Id.* at 620. The court concluded that Samsung and the consumers' arbitration proceeded in line with their agreement when AAA considered the fee dispute and terminated the arbitration within its discretion. *Id.* "At that point, arbitration was complete, and the district court did not have the authority to flout the parties' agreement and disturb the AAA's judgment." *Id.* The court found this outcome to be consistent with other circuits that have considered the issue. *Id.* at 620–621 (citing *Dealer Computer Services, Inc. v. Old Colony Motors, Inc.*, 588 F.3d 884 (5th Cir. 2009); *Lifescan, Inc. v. Premier Diabetic Services, Inc.*, 363 F.3d 1010 (9th Cir. 2004)).

Less than a month later, the Seventh Circuit applied its holding in *Wallrich* to a similar case against Samsung. *Hoeg v. Samsung Elecs. Am., Inc.*, No. 24-1274, 2024 WL 3593896 at *1 (7th Cir. July 31, 2024). The consumers in *Hoeg* brought the same substantive claims against Samsung before the AAA. Samsung failed to pay its fees by the AAA's deadline, so the AAA extended the deadline. *Id.* On the day of the extended deadline, Samsung and the consumers jointly requested the AAA stay the arbitration to allow them to mediate their claims. *Id.* The AAA declined and terminated the proceedings due to Samsung's refusal to pay fees. *Id.* Unlike the proceedings in *Wallrich*, the AAA indicated that the consumers could refile their arbitration demands if mediation failed. *Id.* Though mediation was unsuccessful, instead of refiling their arbitration demands the consumers filed a petition to compel arbitration in federal court

6

based on the same theory used in *Wallrich*. *Id.* The district court granted the petition and compelled Samsung to arbitrate and pay the AAA's administrative fees. *Id.*

The Seventh Circuit reversed. The court noted that like *Wallirch*, "the consumers filed arbitration demands before the AAA; Samsung refused to pay its share of administrative fees; the AAA terminated the arbitration in its discretion; and the consumers sought to compel arbitration in district court due to Samsung's refusal to pay fees." *Id.* Even though the consumers in *Hoeg* were not given the opportunity to advance Samsung's share of the filing fees and proceed with the arbitration, the court concluded that "*Wallrich* controls, arbitration has been completed in line with the parties' agreement, and the consumers can only file their substantive claims in an appropriate court." *Id.* at 2.

*Wallrich* controls here as well. Like the arbitration agreement in *Wallrich* and *Hoeg*, the arbitration agreements in the 2020 and 2022 Terms & Conditions state that arbitration will be conducted under the AAA's rules, including the AAA's Consumer Arbitration Rules, and that payment of all filing, administration and arbitrator fees will be governed by the AAA's rules. Rule 12 of the AAA's Consumer Arbitration Rules, which covers the AAA's requirement that businesses register arbitration agreements on its the Consumer Clause Registry and payment of the Registry fee, states that "[t]he AAA will decline to administer consumer arbitrations arising out of that arbitration agreement where the business fails to pay the review and Registry fee." ECF No. 55-15 at 17 (AAA Consumer Arbitration Rules, Amended and Effective September 1, 2014). "If the AAA declines to administer a case due to the business's non-compliance with this registration requirement, the parties may choose to submit their dispute to the

7

appropriate court." *Id.* at 18. Thus, even assuming that the arbitration agreement in the 2020 and 2022 Terms & Conditions has not been superseded by the subsequent 2023 Terms & Conditions, I must deny the petitioners' motion to compel. Petitioners in this case filed their arbitration demands before the AAA. Kohl's refused to register its arbitration agreement and pay the requisite fees. In accordance with its rules the AAA declined to administer the cases. Pursuant to Rule 12 of the AAA's Consumer Arbitration Rules, petitioners are free to pursue their substantive claims in court.

### III. CONCLUSION

Under the Seventh Circuit's holding in *Wallrich* and *Hoeg*, I must conclude that arbitration has been completed in line with the parties' agreement, and I cannot compel Kohl's to arbitrate or to pay the associated fees. Petitioners may still bring their substantive claims against Kohl's in an appropriate court.

**THEREFORE, IT IS ORDERED** that petitioners' motion to compel arbitration (ECF No. 61) is **DENIED**.

**IT IS FURTHER ORDERED** that Kohl's motion for leave to file three-Page sur-reply (ECF No. 74) is **DENIED AS MOOT**.

Dated at Milwaukee, Wisconsin, this 13th day of September, 2024.


/s/ Lynn Adelman
LYNN ADELMAN
United States District Judge

8