No. 24-2806

─────────────────────────────

In the

# United States Court of Appeals
### for the Seventh Circuit

───────────────

ANA BERNAL, AMIEE MARQUEZ,
PATRICIA JUAREZ, AND CLARA ROA,

*Petitioners–Appellants,*

v.

KOHL'S CORPORATION AND KOHL'S, INC.,

*Respondents–Appellees.*

───────────────

On Appeal from the United States District Court for the
Eastern District of Wisconsin, No. 2:23-cv-01542
Hon. Lynn Adelman, United States District Judge

─────────────────────────────

## PETITIONERS-APPELLANTS' REPLY BRIEF

─────────────────────────────

Martin Woodward
KITNER WOODWARD PLLC
13101 Preston Road
Suite 110
Dallas, TX 75240
(214) 443-4300
*martin@kitnerwoodward.com*

Kiran N. Bhat
  *Counsel of Record*
KELLER POSTMAN LLC
1101 Connecticut Avenue, N.W.,
Suite 1100
Washington, DC 20036
(202) 918-1123
*kiran.bhat@kellerpostman.com*

Ethan H. Ames
KELLER POSTMAN LLC
150 N. Riverside Plaza,
Suite 4100
Chicago, IL 60606
(312) 741-5220
*ethan.ames@kellerpostman.com*

*Counsel for Petitioners–Appellants*

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ........................................................................ iv

INTRODUCTION ..................................................................................... 1

ARGUMENT ............................................................................................ 4

I.   Kohl's Refused To Arbitrate At The AAA And § 4 Required Specific Performance. ................................................................. 4

   A.  *Wallrich* Does Not Excuse Kohl's Refusal To Arbitrate. ...... 5

      1.  There was no arbitration process or exercise of arbitral discretion here as there was in *Wallrich*. ........ 5

      2.  Compelling arbitration would be consistent with the AAA's judgment. ..................................................... 9

   B.  Both Parties Performed Under The AAA Agreement For Months Before Appellants Filed Demands. .................. 12

II.  The AAA Arbitration Agreement Contained Kohl's Promise To Arbitrate, Not Its Option To Do So. ........................ 13

III.  Kohl's Other Justifications For Its Refusal To Arbitrate Fail. ....................................................................................... 16

   A.  The Implied Covenant Barred Kohl's Unilateral Mid-Dispute Terms Change. ..................................................... 16

   B.  Kohl's Neither Invited Nor Obtained "Assent" To Its Unilateral Mid-Dispute Terms Change. ........................... 18

      1.  Kohl's "assent" construct fails. .................................... 18

      2.  Remand for discovery is unnecessary .......................... 23

   C.  The New Terms Are Unenforceable. ................................. 24

      1.  The new terms are unconscionable. ............................. 24

      2.  Severance is no answer. ............................................... 27

IV.  Kohl's Must Pay Appellants' Fees And Costs In The Compelled Arbitrations. ................................................... 29

A.  Section 1281.97 Is Not Waivable And Mandates
    Sanctions On These Facts. ................................................. 29

B.  The Parties Selected The FAA's Substantive
    Provision, Not Its Procedural Provisions. ........................... 30

C.  The FAA Does Not Facially Preempt Section 1281.97. ...... 32

CONCLUSION ........................................................................... 35

CERTIFICATE OF COMPLIANCE ........................................... 36

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Adams v. Postmates, Inc.*,
  414 F. Supp. 3d 1246 (N.D. Cal. 2019), *aff'd*, 823 F. App'x
  535 (9th Cir. 2020) ........................................................................ 10, 11

*Am. Exp. Co. v. Italian Colors Rest.*,
  570 U.S. 228 (2013) ............................................................................... 27

*Ambrosia Land Invs., LLC v. Peabody Coal Co.*,
  521 F.3d 778 (7th Cir. 2008) ................................................................. 24

*Amcast Indus. Corp. v. Detrex Corp.*,
  2 F.3d 746 (7th Cir. 1993) ..................................................................... 27

*Applebaum v. Lyft, Inc.*,
  263 F. Supp. 3d 454 (S.D.N.Y. 2017) .................................................... 17

*AT&T Mobility LLC v. Concepcion*,
  563 U.S. 333 (2011) ............................................................................... 34

*Baierl v. McTaggart*,
  629 N.W.2d 277 (Wis. 2001) ........................................................... 27, 28

*Berman v. Freedom Fin. Network, LLC*,
  30 F.4th 849 (9th Cir. 2022) ................................................................. 18

*Boomer v. AT&T Corp.*,
  309 F.3d 404 (7th Cir. 2002) ........................................................... 22, 23

*Borden, Inc. v. Meiji Milk Prods. Co.*,
  919 F.2d 822 (2d Cir. 1990) .................................................................. 33

*Brooks v. WarnerMedia Direct, LLC*,
  No. 1:23-cv-11030, 2024 WL 3330305 (S.D.N.Y. July 8,
  2024) ................................................................................................. 10, 25

*Carnes Co. v. Stone Creek Mech., Inc.,*
    412 F.3d 845 (7th Cir. 2005) ............................................................ 18

*Coady v. Cross Country Bank,*
    729 N.W.2d 732 (Wis. Ct. App. 2007) ...................................... 4, 28

*Coinbase v. Suski,*
    602 U.S. 143 (2024) ...................................................................... 7, 22

*Costa v. Rd. Runner Sports, Inc.,*
    299 Cal. Rptr. 3d 785 (Cal. Ct. App. 2022) ........................... 19, 20

*Cronus Invs., Inc. v. Concierge Servs.,*
    107 P.3d 217 (Cal. 2005) .................................................................. 31

*Dasher v. RBC Bank (USA),*
    745 F.3d 1111 (11th Cir. 2014) ...................................................... 22

*Dean Witter Reynolds, Inc. v. Byrd,*
    470 U.S. 213 ........................................................................................ 5

*Dean Witter Reynolds Inc. v. Prouse,*
    831 F. Supp. 328 (S.D.N.Y. 1993) .................................................. 17

*Domer v. Menard, Inc.,*
    116 F.4th 686 (7th Cir. 2024) ................................................ 3, 19, 24

*Druco Rests., Inc. v. Steak n Shake Enters., Inc.,*
    765 F.3d 776 (7th Cir. 2014) ............................................... 2, 14, 15

*Edmondson v. Lilliston Ford Inc.,*
    722 F. App'x 251 (3d Cir. 2018) ..................................................... 10

*English v. Gen. Elec. Co.,*
    496 U.S. 72 (1990) ............................................................................. 32

*Epic Sys. Corp. v. Lewis,*
    584 U.S. 497 (2018) ........................................................................... 32

*Galt v. Libbey-Owens-Ford Glass Co.,*
    376 F.2d 711 (7th Cir. 1967) ........................................................... 29

*Gordon v. Kohl's Dep't Stores, Inc.*,
119 F. Supp. 3d 356 (E.D. Pa. 2015) .................................................. 15

*Heckman v. Live Nation Ent., Inc.*,
120 F.4th 670 (9th Cir. 2024) ............................................................ 27

*Hill v. Gateway 2000, Inc.*,
105 F.3d 1147 (7th Cir. 1997) ...................................................... 22, 23

*Hoeg v. Samsung Elecs. Am.*,
No. 24-1274, 2024 WL 3593896 (7th Cir. July 31, 2024) ................. 6, 9

*Ineman v. Kohl's Corp.*,
No. 3:14-cv-398, 2015 WL 1399052 (W.D. Wis. Mar. 26, 2015) ...................................................................................... 2, 15

*Jacobs v. USA Track & Field*,
374 F.3d 85 (2d Cir. 2004) ............................................................... 8, 9

*Kindred Nursing Ctrs. Ltd. P'ship v. Clark*,
581 U.S. 246 (2017) .......................................................................... 33

*LaSalle Nat'l Bank v. Metro. Life Ins. Co.*,
18 F.3d 1371 (7th Cir. 1994) .............................................................. 7

*Midwest Neurosciences Assocs., LLC v. Great Lakes Neurosurgical Assocs., LLC*,
920 N.W.2d 767 (Wis. 2018) ............................................................ 22

*Nelsen v. Farmers Mut. Auto. Ins. Co.*,
90 N.W.2d 123 (Wis. 1958) .............................................................. 18

*Peleg v. Neiman Marcus Grp., Inc.*,
140 Cal. Rptr. 3d 38 (Cal. Ct. App. 2012) .................................... 16, 17

*Peng v. Uber Techs., Inc.*,
237 F. Supp. 3d 36 (E.D.N.Y. 2017) ................................................. 17

*Peters v. Amazon Servs. LLC*,
2 F. Supp. 3d 1165 (W.D. Wash. 2013), *aff'd,* 669 F. App'x
487 (9th Cir. 2016) ........................................................................... 17

*ProCD, Inc. v. Zeidenberg,*
  86 F.3d 1447 (7th Cir. 1996) .............................................. 22

*Pruett v. WESTconsin Credit Union,*
  998 N.W.2d 529 (Wis. Ct. App. 2023), *review denied by* 9
  N.W.3d 277 (Wis. 2024) ....................................... 2, 3, 16–21

*Sonday v. Dave Kohel Agency, Inc.,*
  293 Wis. 2d 458 (2006) ..................................................... 28

*Tickanen v. Harris & Harris, Ltd.,*
  461 F. Supp. 2d 863 (E.D. Wis. 2006) ........................... 22, 23

*Trudeau v. Google LLC,*
  349 F. Supp. 3d 869 (N.D. Cal. 2018), *aff'd,* 816 F. App'x
  68 (9th Cir. 2020) ............................................................ 17

*Wallrich v. Samsung Elecs. Am., Inc.,*
  106 F.4th 609 (7th Cir. 2024) ........................ 1, 5, 6, 8, 9, 10

*Wigod v. Wells Fargo Bank, N.A.,*
  673 F.3d 547 (7th Cir. 2012) ............................................... 8

**Statutes**

9 U.S.C.
  § 2 ................................................................................... 33
  § 4 ......................................................................... 5, 9, 23

Cal. Civ. Code
  § 1770(a)(14) .................................................................... 15
  § 3513 .............................................................................. 32

Cal. Civ. Proc. Code
  § 1281.2 ........................................................................... 34
  § 1281.97 ................................................................... 33, 34
  § 1281.97(a)(1) ........................................................... 29, 30
  § 1281.97(a)(2) ................................................................. 30
  § 1281.97(b)(2) ............................................................ 4, 29

Wis. Stat. Ann. § 100.18(1) ................................................ 15

**Other Authorities**

Am. Arb. Assoc., *Supplementary Rules for Multiple Case Filings* (Aug. 1, 2021), https://perma.cc/XA2S-GWT5......................6, 7

Restatement (Second) of Contracts
  § 225 (1981) ........................................................................7
  § 279 (1981) ......................................................................29

## INTRODUCTION

Kohl's promised Appellants that it would arbitrate disputes at the AAA.  The arbitration clause incorporates the Rules.  The Rules require Kohl's to register its agreement and make clear that there will be no arbitration without registration.  Kohl's promise to register its agreement was implicit in, and a condition precedent to, its promise to arbitrate.

Relying on *Wallrich v. Samsung Electronics America, Inc.*, 106 F.4th 609 (7th Cir. 2024), Kohl's defends the district court's conclusion that refusal to register was not refusal to arbitrate.  But if a business's refusal to register completes arbitration before it starts, arbitration is nothing at all.  That is why *Wallrich* necessarily turned on the *process* that led the AAA to close the demands, not merely on that *result*.

The parties "bargained for the AAA's *discretion*," not for Kohl's noncompliance with a prerequisite to the AAA's exercise of that discretion.  *Wallrich*, 106 F.4th at 620 (emphasis added).  Unlike Samsung, Kohl's never raised its concerns with the AAA.  Those concerns now read as rationalizations for Kohl's refusal to arbitrate.  Respondents-Appellees' Response Brief ("RB"), at 2–4, 17–18.

Jarringly, Kohl's also justifies its refusal to arbitrate by recasting its promise to arbitrate as optional. RB 47–49. But where one side retains that option, this Court and others have concluded that the arbitration "contract [is] illusory" and unenforceable. *Druco Rests., Inc. v. Steak n Shake Enters., Inc.*, 765 F.3d 776, 783 (7th Cir. 2014) (collecting cases). And Kohl's drafts arbitration clauses to enforce them. *See, e.g.*, *Ineman v. Kohl's Corp.*, No. 3:14-cv-398, 2015 WL 1399052 (W.D. Wis. Mar. 26, 2015). So the best interpretation of the AAA arbitration agreement is that Kohl's promised to arbitrate and then refused to do so.

Kohl's other justifications for its refusal to arbitrate remain unpersuasive. Kohl's says the implied covenant of good faith and fair dealing has no application because its mid-dispute attempt to revise the arbitration procedures was not unilateral. RB 57. That position ignores the facts. Kohl's had the right to "update or modify" the AAA arbitration agreement "without prior notice." 1-SA-077. The same day Appellants filed their AAA demands, Kohl's did so, purporting to bind Appellants to process changes that advantaged the company. That violated the covenant. *See Pruett v. WESTconsin Credit Union*, 998 N.W.2d 529, 545–47 (Wis. Ct. App. 2023), *review denied by* 9 N.W.3d 277 (Wis. 2024).

Kohl's responds that Appellants "assented" to its unilateral changes. But acceptance must be "unequivocal" and cannot rest on conduct "consistent either with the continued existence of the original contract, or with a modification." *Pruett*, 998 N.W.2d at 546 (citation omitted); *see also Domer v. Menard, Inc.*, 116 F.4th 686, 694–95 (7th Cir. 2024). Appellants engaged in actions "consistent . . . with the continued existence of the original contract" by following that contract for months and then filing AAA demands as it required. *Pruett*, 998 N.W.2d at 546 (citation omitted). Kohl's therefore cannot point to other *inaction* as Appellants' repudiation of the original contract. And in all events, the contracts on which Kohl's relies to argue assent make clear that Appellants had no choice in the matter. That Kohl's ever invited Appellants' assent—let alone obtained it—is wrong.

What's more, Kohl's would not be able to enforce its changes even if Appellants were somehow bound to them. Kohl's has no answer for procedural unconscionability other than its deficient "assent" argument. RB 62. And without any explanation for the detriments its preferred procedures would inflict on these four Appellants, Kohl's turns misguided fire on opposing counsel and nonparties, RB 62–63, and argues for

severance, *id*. at 59–61.  But severance would just result in Appellants having to litigate in Wisconsin court without the right to class participation, a result Wisconsin's law bars.  *See Coady v. Cross Country Bank*, 729 N.W.2d 732, 746–47 (Wis. Ct. App. 2007).

The Court should enforce the original arbitration agreement.  And it should order Kohl's to pay Appellants' "reasonable attorney's fees and costs related to the arbitration."  Cal. Civ. Proc. Code § 1281.97(b)(2).

## ARGUMENT

The Court should reverse and remand with instructions to grant Appellants' motion to compel arbitration because (1) Kohl's refused to arbitrate and § 4 provides the remedy, (2) affirmance would vindicate the flawed premise that Kohl's did not promise to arbitrate, (3) Kohl's unilateral mid-dispute terms change did not excuse its refusal to arbitrate, and (4) California law requires Kohl's to pay Appellants' attorneys' fees and costs in the compelled arbitrations.

## I.    Kohl's Refused To Arbitrate At The AAA And § 4 Required Specific Performance.

Kohl's refused to arbitrate at the AAA as agreed.  The FAA "leaves no place for the exercise of discretion by a district court, but instead mandates that district courts *shall* direct the parties to proceed to

4

arbitration . . . ." *Dean Witter Reynolds, Inc. v. Byrd*, 470 U.S. 213, 218 (citing 9 U.S.C. § 4).  And *Wallrich* does not protect businesses that block the arbitration they promised from ever happening.

## A.   *Wallrich* Does Not Excuse Kohl's Refusal To Arbitrate.

### 1.   There was no arbitration process or exercise of arbitral discretion here as there was in *Wallrich*.

Kohl's seeks an extension of *Wallrich* that is wrong as both a matter of fact and law.  Indeed, *Wallrich* is distinguishable on its face without resort to any "hyper-specific comparison of the facts" for the simple reason that the AAA did not do anything in this case other than decline administration, which it had no choice but to do under Rule 12.  *Contra* RB 5.  Kohl's refusal to register its own agreement, under which the parties performed for months, *see* Section I.B, *infra*, meant there was no arbitral process at all here, unlike in *Wallrich*.

In *Wallrich*, "Samsung flagged several problems with the consumers' filings to the AAA."  *Wallrich*, 106 F.4th at 614.  Next, the AAA applied its Supplementary Rules for Multiple Case Filings (the "Supplementary Rules") to try and resolve the disputes.  *Id.* at 613–14. When Samsung refused to pay fees, the consumers asked the AAA to stay their arbitrations, which the Supplementary Rules allowed.  *Id.* at 614.

The AAA "denied the request for a stay and closed the arbitration proceedings." *Id*. "At that point, arbitration was complete." *Id*. at 620.

In *Hoeg v. Samsung Electronics America*, No. 24-1274, 2024 WL 3593896, at *1–2 (7th Cir. July 31, 2024), the AAA administered the arbitrations and attempted to resolve a delegated fee dispute by extending Samsung's payment deadline. When Samsung still refused to pay, the AAA closed the arbitrations and offered consumers the chance to refile, which they did not do before moving to compel. *Id*. at *1–2. The facts of *Wallrich* and *Hoeg* reflected exercises of arbitral discretion, which courts could not overturn after the arbitral processes were complete. *See id*. at *2; *Wallrich*, 106 F.4th at 620.

There was no analogous arbitral process here. Kohl's says the "AAA wouldn't go for" the arbitrations, RB 4, but Kohl's never even gave the AAA a chance. Had Kohl's legitimately wanted to invoke the AAA's discretion, it would have registered its agreement like Samsung did. The AAA could then have applied its Supplementary Rules and tried to resolve the parties' disputes as it did in *Wallrich*. 106 F.4th at 614. That would have put the parties on the "efficient and economical path toward the resolution" of their disputes as they agreed. Am. Arb. Assoc.,

*Supplementary Rules for Multiple Case Filings* 3 (Aug. 1, 2021), https://perma.cc/XA2S-GWT5.  Kohl's instead refused to register, cutting off all access to that path.

That was a refusal to arbitrate, and the AAA's ensuing closure of the arbitrations was a *fait accompli*.  Rule 12 did not merely "allow" the AAA to terminate proceedings in its discretion, RB 37, it specified that the penalty for noncompliance was that the AAA would decline administration, 2-SA-202; RB 13.  The AAA could not ignore that mandate without disregarding the parties' contract, from which its authority flowed.  *See Coinbase v. Suski*, 602 U.S. 143, 147–48 (2024).  And Kohl's does not dispute that it violated Rule 12 to avoid arbitrating at the AAA.  Whatever its justifications, intentional "failure to perform a condition precedent may be construed as a breach of contract."  *LaSalle Nat'l Bank v. Metro. Life Ins. Co.*, 18 F.3d 1371, 1374 (7th Cir. 1994); *see also* Restatement (Second) of Contracts § 225(3) (1981).

To avoid its breach, Kohl's miscasts refusal to arbitrate as the AAA's discretionary resolution of a delegated dispute over arbitral procedure.  Kohl's cheekily asserts that its promise to arbitrate was "not within the promisor's control" because the AAA somehow retained

7

delegated "discretion to decide the consequence of Kohl's decision not to register its agreement."  RB 46 (citing *Wigod v. Wells Fargo Bank, N.A.*, 673 F.3d 547, 561–62 (7th Cir. 2012)).

The idea that Kohl's lacked control over whether it registered its own agreement is absurd.  So Kohl's must argue that the AAA had discretion to ignore Rule 12.  Elsewhere, Kohl's cites the *Wallrich* Court's observation that under "the AAA rules, the AAA 'has the discretion to apply or not to apply' any of its rules . . . ."  106 F.4th at 613; *see also* RB 36–37.  But that quotation does not mean what Kohl's suggests.  The parties did not give the AAA complete discretion to revise or ignore Rule 12 or any other Rule.  Surely, for example, the parties did not grant the AAA discretion to substitute trial by combat for the Rule 32 arbitration hearing.  2-SA-210.

The *Wallrich* Court was referring instead to the AAA's discretion "to apply or not to apply the *Consumer Arbitration Rule[s]*" as a whole. 2-SA-192; *see also* 2-SA-197 (Rule 1(e)) ("The AAA has the initial authority to apply or not to apply the *Consumer Arbitration Rules*.").  The AAA has multiple sets of rules and parties often seek application of different sets.  *See, e.g.*, *Jacobs v. USA Track & Field*, 374 F.3d 85, 86 (2d

Cir. 2004) ("Petitioner contends that the AAA's 'Commercial Rules' apply, while respondents . . . maintain that the Commercial Rules have been supplanted in doping cases by a set of 'Supplementary Procedures.'"). Courts defer to the AAA's discretion in such situations. *See id.* In *Wallrich*, the Court deferred to the AAA's discretion to "apply or not to apply" the very Supplementary Rules Kohl's avoided by refusing to register its agreement. 106 F.4th at 613–14.

Kohl's deprived the AAA of *any* opportunity to exercise its discretion. That makes this case unlike *Wallrich* or *Hoeg*. Extending those cases to these facts would end a consumer's right to compel arbitration after a business refuses to honor its agreement. 9 U.S.C. § 4.

### 2. Compelling arbitration would be consistent with the AAA's judgment.

Given the foregoing, compelling Kohl's to arbitrate would not "override" the AAA's judgment. *Contra* RB 43. The AAA made clear that "[i]f the business does not comply [with Rule 12], *absent a court order*, the AAA will be unable to provide arbitration administration to the parties to assist them in resolving their disputes." 2-SA-181 (emphasis added). Kohl's calls this the AAA's "generic statement" that it will comply with all court orders, RB 42, but has no answer for the surrounding clauses.

The AAA would not have noted its inability "to provide arbitration administration to the parties to assist them in resolving their disputes" "absent court order" unless it thought Kohl's had failed to "comply" with the Rules and that Appellants could properly seek a court order to remedy that failure. 2-SA-181. That the AAA says elsewhere that it "will comply with any court orders," RB 42 (citing 2-SA-192; 2-SA-195), only supports this reading.

Courts regularly compel arbitration when doing so would be consistent with the AAA's judgment because, as noted, the alternative would leave § 4 a dead letter. *See Brooks v. WarnerMedia Direct, LLC*, No. 1:23-cv-11030, 2024 WL 3330305, at *6–7 (S.D.N.Y. July 8, 2024); *Adams v. Postmates, Inc.*, 414 F. Supp. 3d 1246, 1255–56 (N.D. Cal. 2019), *aff'd*, 823 F. App'x 535 (9th Cir. 2020); *Edmondson v. Lilliston Ford Inc.*, 722 F. App'x 251, 252–55 (3d Cir. 2018).

Kohl's attempt to distinguish these cases, RB 43–45, ignores again the AAA's letters finding a Rule 12 violation, which invite judicial intervention and rest on the forum's continuing availability to administer arbitration. 2-SA-181; 2-SA-184. In *Brooks*, the AAA did much the same. 2024 WL 3330305, at *5, *7. That was enough to distinguish *Wallrich*

10

and show that granting the consumers' § 4 petition "would not circumvent the AAA's interpretation and application of its own rules." *Id.* at *7.

In *Adams*, the AAA began the arbitration process and indicated that the "arbitrations would move forward and that payment of the filing fees was expected." 414 F. Supp. 3d at 1250. When the company refused, the court properly compelled arbitration consistent with the AAA's statement. *Id.* at 1256.[1]

In *Edmonson*, the district court directed the parties to arbitrate by entering a show cause order after the business chose not to register its agreement, which forced the AAA to decline administration. 722 F. App'x at 253. The business registered its agreement before the district court could enter an order requiring that action. *Id.* If there was something categorically wrong with the district court directing the business to

---

[1] Kohl's cites *Adams* to suggest all fee matters are for the AAA. RB 44–45. That conflates two distinct issues. Appellants agree that the AAA should resolve delegated disputes over arbitral *filing* fees, which it has not yet had the chance to do because of Kohl's non-registration. Separately, this Court should order Kohl's to pay Appellants' fees and costs in the compelled arbitrations under California law given Kohl's failure to pay arbitral *registration* fees. *See* Section IV, *infra*.

register after the AAA had already declined administration, the Third Circuit would have said so. There isn't, so it didn't.

## B. Both Parties Performed Under The AAA Agreement For Months Before Appellants Filed Demands.

Kohl's also claims Appellants failed to show a written agreement to arbitrate. RB 29–30. But Appellants had one with Kohl's: the AAA arbitration agreement in the 2020 and 2022 Terms. Petitioners-Appellants' Opening Brief and Required Short Appendix ("OB"), at 29–30; RB 10–12. And the parties performed under that agreement for months before Kohl's decided it did not want to anymore.

In December 2022, after Appellants learned of their false advertising claims, they each sent Kohl's a notice of dispute as the AAA arbitration agreement requires. 1-SA-080 ("[T]he party seeking arbitration must first notify the other party of the Dispute in writing at least 30 days in advance of initiating the arbitration."). Their notices expressly invoked the 2022 Terms containing the AAA arbitration agreement. 1-SA-113; 1-SA-116; 1-SA-119; 1-SA-122. Kohl's received these notices at a time when its procedures called for AAA arbitration. RB 10–12. And Kohl's has never disputed that for the next five months, it negotiated and mediated with Appellants pursuant to those notices.

OB 15; 1-SA-056 (¶33).  Appellants then filed their demands at the AAA on May 22, 2023, and Kohl's refused to arbitrate by choosing not to register its agreement.

## II.  The AAA Arbitration Agreement Contained Kohl's Promise To Arbitrate, Not Its Option To Do So.

As a fallback position, Kohl's argues that its AAA arbitration agreement was an enforceable "option contract."  RB 47–49.  Apparently, Koh's promise "THAT ANY DISPUTE . . . SHALL BE RESOLVED ONLY BY . . . FINAL AND BINDING, BILATERAL ARBITRATION" at the AAA, 1-SA-079, was really a promise *not* to arbitrate at the AAA unless Kohl's chose to.

That reading distorts the language of Kohl's simple promise beyond recognition.  But assuming the agreement was an enforceable option contract, the implied covenant of good faith and fair dealing prevented Kohl's from exercising its option not to arbitrate.  *See* OB 44–46.  Kohl's argues against this result based on its admission that it decided not to register its agreement to facilitate its mid-dispute terms change.  RB 50.  That gets things backward.  The attempted terms change *was* the violation of the covenant.  *See* Section III.A, *infra*.  Kohl's also says the covenant cannot "rescind the authority the parties delegated to the

arbitrator," which closed the arbitrations.  RB 49.  But parties to a contract cannot avoid the covenant by passing their own actions off as those of an arbitral forum.  *See* Section I.A.1, *supra*.

Regardless, the agreement is *not* enforceable as an option contract.  *See, e.g.*, *Druco Rests.*, 765 F.3d at 782–83 (collecting cases).  In *Druco Restaurants*, a franchisor's agreement with franchisees contained the franchisor's exclusive "option to institute a system of arbitration."  *Id*. at 782.  The agreement also "contained a provision for litigation in courts . . . and in fact the [f]ranchisees were limited to resolving disputes in those courts."  *Id*.  But after the franchisees followed that provision, the franchisor "decided to exercise its 'option' to institute a system of nonbinding arbitration."  *Id*.  Kohl's claims here to have done the same, but in reverse:  it exercised an option to institute a new system of litigation instead of the arbitration the contract required.  RB 48.  And like the franchisor in *Druco Restaurants*, Kohl's remained "free under the terms . . . to ignore" the new system at its election.  765 F.3d at 782.

Courts reject retention of such an option as an "illusory promise" because performance is "entirely optional."  *Id*. at 783 (collecting cases from the Fifth, Sixth, and Tenth Circuits).  The franchisor could not

14

"retain[] the discretion to determine the circumstances and procedures under which arbitration may take place" or "chang[e] the rules and procedures as the company [saw] fit." *Id.* at 783.

Kohl's claims those same prerogatives now.  RB 47–49.  But if its interpretation is correct, the AAA arbitration agreement would be "too vague and indefinite to be enforceable" because it would leave for Kohl's "sole discretion the very important issues of whether and how any claims would be arbitrated, as well as which disputes would be subject to arbitration." *Druco Rests.*, 765 F.3d at 784.  Kohl's drafts its arbitration clauses to enforce them.  *See, e.g.*, *Gordon v. Kohl's Dep't Stores, Inc.*, 119 F. Supp. 3d 356 (E.D. Pa. 2015); *Ineman*, 2015 WL 1399052.  The best read of the AAA arbitration agreement remains the simplest:  by promising to arbitrate, Kohl's promised to arbitrate, not to arbitrate or litigate.

The alternative is that Kohl's drafted a contract that was not only unenforceable but that also arguably violated consumer protection laws. *See, e.g.*, Cal. Civ. Code § 1770(a)(14) (penalizing representations "that a transaction confers or involves rights, remedies, or obligations that it does not have or involve"); Wis. Stat. Ann. § 100.18(1) (penalizing "any

assertion, representation or statement of fact which is untrue, deceptive or misleading" made with "intent to induce the public in any manner to enter into any contract . . . relating to the purchase . . . of any . . . merchandise").

## III. Kohl's Other Justifications For Its Refusal To Arbitrate Fail.

Kohl's overreached by unilaterally changing the arbitral procedures in the middle of its disputes with Appellants. It now relies on that overreach to defend its refusal to arbitrate. That defense fails.

### A. The Implied Covenant Barred Kohl's Unilateral Mid-Dispute Terms Change.

When an arbitration contract reserves to the drafter a unilateral right to amend, as Kohl's AAA arbitration agreement did, 1-SA-077, the implied covenant of good faith and fair dealing constrains the drafter from doing so to impair an opponent's rights in a preexisting dispute. *See, e.g.*, *Pruett*, 998 N.W.2d 529 at 545–47; *Peleg v. Neiman Marcus Grp., Inc.*, 140 Cal. Rptr. 3d 38, 67 (Cal. Ct. App. 2012). The reason is apparent. Any other rule would allow drafters of arbitration agreements to change the forum, move the procedural goalposts, or reset pre-demand notice periods, just as Kohl's did here. OB 48–51.

In response, Kohl's attacks a straw man.  It says that "Appellants claim that the parties cannot, as a matter of law, *agree* to arbitrate 'preexisting disputes.'"  RB 56 (emphasis added).  But Kohl's never sought, and Appellants never gave, their *agreement* to Kohl's unilateral mid-dispute terms change.  That Kohl's "doesn't argue" on appeal that "it could *unilaterally* impose" the terms change is irrelevant.  RB 57.  It plainly could.  1-SA-077 ("Kohl's reserves the right to update or modify these Terms of Use at any time, without prior notice").  And per the text of the contracts on which it now relies to argue assent, that is *exactly what Kohl's did*.  *See* Section III.B.1, *infra*.  *Pruett*, *Peleg*, and similar cases bar that very tactic.  OB 48–51.[2]

---

[2] None of Kohl's contrary cases, RB 56–57, involved contested terms changes "after a dispute had arisen."  *Trudeau v. Google LLC*, 349 F. Supp. 3d 869, 880 (N.D. Cal. 2018), *aff'd,* 816 F. App'x 68 (9th Cir. 2020); *see also Dean Witter Reynolds Inc. v. Prouse*, 831 F. Supp. 328, 330 (S.D.N.Y. 1993) (terms change five years before arbitration demand filed); *Peng v. Uber Techs., Inc.*, 237 F. Supp. 3d 36, 44 (E.D.N.Y. 2017) (terms change four months before suit filed); *Peters v. Amazon Servs. LLC*, 2 F. Supp. 3d 1165, 1173 (W.D. Wash. 2013) (terms change one year before suit filed), *aff'd,* 669 F. App'x 487 (9th Cir. 2016); *Applebaum v. Lyft, Inc.*, 263 F. Supp. 3d 454, 469 (S.D.N.Y. 2017) (plaintiff "does not dispute that he agreed to" arbitration clause after filing suit).

### B. Kohl's Neither Invited Nor Obtained "Assent" To Its Unilateral Mid-Dispute Terms Change.

#### 1. Kohl's "assent" construct fails.

Appellants did not assent to Kohl's unilateral mid-dispute terms change because they acted consistent "with the continued existence of the original contract" and inconsistent with modification. *Pruett*, 998 N.W.2d at 546–47 (quoting *Nelsen v. Farmers Mut. Auto. Ins. Co.*, 90 N.W.2d 123, 134 (Wis. 1958)). They filed demands at the AAA the same day Kohl's announced its terms change, which—after months of mutual performance under the AAA arbitration agreement—rendered ambiguous any *inaction* Kohl's now claims shows Appellants' "assent."

Although Kohl's argues that its revised terms "specify how they can be accepted or rejected, and filing an arbitration demand was not a valid rejection," RB 27, assent to a contractual modification still must be unambiguous. *Carnes Co. v. Stone Creek Mech., Inc.*, 412 F.3d 845, 853 (7th Cir. 2005) (under Wisconsin law, "acts relied upon to modify a prior contract must be unequivocal in character, and acts that are ambiguous as to whether a modification was intended are not sufficient to establish a modification"); *Berman v. Freedom Fin. Network, LLC*, 30 F.4th 849, 856 (9th Cir. 2022) (similar under California law). Passive conduct is not

18

the type of "*action*, such as clicking a button or checking a box, that unambiguously manifests . . . assent" to a new set of online terms. *Domer*, 116 F.4th at 695 (emphasis added) (quoting *Berman*, 30 F.4th at 856).

Kohl's only assent argument applicable to all four Appellants[3] is that, because Appellants were in Kohl's rewards program when Kohl's announced its unilateral mid-dispute terms change, they agreed to a rewards program contract through which they agreed to the terms change. RB 14–16, 51–56. That is not enough.

Courts in both Wisconsin and California—the only states whose laws could plausibly govern contract formation here—have found that consumers did not assent to contractual modifications on closely analogous facts. *See Pruett*, 998 N.W.2d at 547–49; *Costa v. Rd. Runner Sports, Inc.*, 299 Cal. Rptr. 3d 785, 794 (Cal. Ct. App. 2022). In *Costa*, the court rejected a corporation's argument that a consumer's failure to opt out of a loyalty program was assent to revised terms, even assuming

---

[3] Kohl's also suggests that Appellants Bernal, Juarez, and Marquez "continued to interact with Kohl's online and in-store since the 2023 Terms were adopted." RB 16. That is no answer for Appellant Roa. And as explained below, *infra* at 20–21, it is irrelevant because Kohl's terms change purported to bind Appellants automatically, regardless of what later actions they did or did not take.

the consumer knew about those changes through his lawyer. 299 Cal. Rptr. 3d at 794. And in *Pruett*, the court found a consumer's continued credit union membership insufficient to bind him to new terms because the requirements to opt out were "not sufficiently clear to reasonably convey what was required . . . to demonstrate his assent to, or rejection of, the modified terms." 998 N.W.2d at 547.

This case mirrors *Costa* and is more like *Pruett* than Kohl's admits. Kohl's suggests that Appellants could easily have rejected the 2023 Terms had they unenrolled from Kohl's rewards program and "stopped shopping at Kohl's or using Kohl's website." RB 58. But that is far from clear as a textual matter. True, the Kohl's rewards program agreement invites members to "un-enroll" if they do not agree. SSA41. But it also purports to bind everyone who "enrolled in" or was "participating in" the rewards program "[e]ffective May 22, 2023." *Id*. Appellants were "enrolled in" and "participating in" Kohl's rewards program on that date. *Id*. And the rewards program agreement incorporates Kohl's revised arbitration terms. SSA43. So existing rewards program members like Appellants were automatically bound to both the rewards program

agreement and the terms change, regardless of whether they later sought to unenroll from the rewards program.

That feature is not just limited to the rewards program agreement. Kohl's revised arbitration terms themselves contain an "Opt-out" procedure.    1-SA-104–05.    But Appellants could not have taken advantage of that procedure because they would have had to have written to Kohl's "within 60 days of the first time you agreed to terms with Kohl's that included an arbitration agreement."    1-SA-104.    That deadline had long passed for Appellants and so trying to opt out would have been futile. *See Pruett*, 998 N.W.2d at 548.

The text of the relevant contracts shows that Kohl's bound Appellants for "not doing something that was impossible," i.e., not predicting Kohl's terms change and preemptively withdrawing from all contact.  *Id.*  That is far from enough to establish assent.  *See id.*  And it also shows that Kohl's never sought or needed the assent it now claims immunizes its terms change from legal scrutiny.

As should by now be obvious, Kohl's terms change was *unilateral,* an exercise of its right to "update or modify" the AAA arbitration agreement "at any time, without prior notice."  1-SA-077.  The only

reason Kohl's argues otherwise, against its own contractual text, is because the implied covenant of good faith and fair dealing bars unilateral terms changes made mid-dispute for the purpose of impairing opponents' rights. *See* Section III.A, *supra.* That is what Kohl's did.

Kohl's assent authorities do not compel a different conclusion. Some stand for only tangentially related propositions. *See Coinbase*, 602 U.S. at 148–49 (courts and not arbitrators decide which of two contracts applies when the first contains an arbitration clause and the second does not); *Midwest Neurosciences Assocs., LLC v. Great Lakes Neurosurgical Assocs., LLC*, 920 N.W.2d 767, 770 (Wis. 2018) (same); *Dasher v. RBC Bank (USA)*, 745 F.3d 1111, 1118 (11th Cir. 2014) (enforcing second contract where both parties expressed "clear and definite intent" to modify); *ProCD, Inc. v. Zeidenberg*, 86 F.3d 1447, 1455 (7th Cir. 1996) (enforcing shrinkwrap license).

Others, in which courts found assent through inaction, featured terms changes that consumers had a true opportunity to reject. *See, e.g.*, *Tickanen v. Harris & Harris, Ltd.*, 461 F. Supp. 2d 863, 867 (E.D. Wis. 2006) (citing *Hill v. Gateway 2000, Inc.*, 105 F.3d 1147, 1149 (7th Cir. 1997)); *Boomer v. AT&T Corp.*, 309 F.3d 404, 415 (7th Cir. 2002). In

*Tickanen* and *Boomer*, the companies notified customers of terms changes months in advance and provided rejection methods. *Tickanen*, 461 F. Supp. 2d at 867; *Boomer*, 309 F.3d at 409. Similarly, in *Hill*, the company gave the customer a month to return the product if he did not agree to the change. 105 F.3d at 1149. These were "reasonable opportunit[ies] to reject the offer." *Boomer*, 309 F.3d at 415. Kohl's provided none because its changes were unilateral.

## 2. Remand for discovery is unnecessary.

Although the district court assumed without deciding that the AAA arbitration agreement in the 2020 and 2022 Terms applied, RSA-004 n.2, this Court can and should decide that the AAA arbitration agreement controls. Kohl's concedes the "making of the agreement for arbitration" at the AAA. 9 U.S.C. § 4; *see also* RB 11 ("Each Appellant acknowledges that she has assented to either the 2020 Terms or the 2022 Terms."). The parties' only dispute is over whether Kohl's successfully bound Appellants to its terms change. But no amount of discovery can establish Appellants' assent because Kohl's never invited it. *See* Section III.B.1, *supra*. And Kohl's revised terms are unenforceable even if it could establish assent. *See* Section III.C, *infra*. This Court can and should

decide the issue now. *See Domer*, 116 F.4th at 695 (although questions of assent "may involve underlying facts, they are questions of law"); *Ambrosia Land Invs., LLC v. Peabody Coal Co.*, 521 F.3d 778, 786 (7th Cir. 2008) ("We may decide the merits of legal issues which were not addressed by the district court only when the facts on which those conclusions are based are not in dispute.").

## C.    The New Terms Are Unenforceable.

Even if Kohl's unilateral mid-dispute terms change was somehow effective despite the covenant, Kohl's could not enforce the revised terms. The revised terms were procedurally unconscionable because of the oppressive way Kohl's imposed them.  They were substantively unconscionable because they sought to deter and delay consumer claims. And severance would be inappropriate as explained.

### 1.    The new terms are unconscionable.

The revised terms are procedurally unconscionable because, contrary to Kohl's assertion, Kohl's never invited Appellants' assent to them.  *See* Section III.B.1, *supra*.  Nor can Kohl's credibly argue that Appellants assented to its revised terms "through the same conduct by which Appellants assented to previous terms (which they wish to enforce)." RB 62.  Kohl's purported to bind Appellants to its terms change

immediately[4] and automatically.  *See* Section III.B.1, *supra*.  And Kohl's does not dispute Appellants' assertion that they assented to the 2020 and 2022 Terms through conspicuous action after receiving notice.  RB 10–11; OB 29–30.  A holistic reading of the facts confirms that Kohl's sought unilaterally to impose its terms change mid-dispute to obtain procedural advantages.  OB 16–17 (explaining key changes).  That was procedurally unconscionable.  OB 54.

The revised terms were also substantively unconscionable in that they sought to punish Appellants for bringing claims at the same time as many others using shared counsel.  *Id*. at 54–57.  Kohl's defends the procedural hurdles in the revised terms on the grounds that "[a]rbitrating many individual cases, when the parties are represented by the same counsel, will necessarily be time-consuming, no matter the procedures."  RB 62.  That ignores that the revised terms s discriminate against Appellants and others who seek to use economies of scale to bring claims that may have otherwise languished.  OB 55–56.  But Kohl's is

---

[4] In *Brooks*, the business initiated a terms change mid-dispute but gave consumers 30 days' advance notice.  2024 WL 3330305, at *3.

also wrong that its revised terms don't "cause any delay above what is expected when lawyers arbitrate many individual cases." RB 63.

In counsel's experience litigating on behalf of thousands of individual clients bringing similar claims before the AAA, the AAA has assigned all available arbitrators hundreds of individual cases. Each arbitrator then proceeds in tandem. That procedure is more advantageous to Appellants for several reasons. It would have provided Appellants an earlier chance at resolution of their claims on the merits; under Kohl's revised terms, only 100 arbitrations can proceed at a time in two rounds, bookended by a pre-dispute period and mediations. 1-SA-102–04. It also would have guaranteed Appellants a chance at arbitration, which has well-recognized benefits over litigation; Kohl's revised terms allow only 200 individual matters to proceed to arbitration before requiring litigation absent settlement. *Id.* And although Kohl's warns that it would take "20 years to complete" all the individual arbitrations here, RB 63, the AAA procedures boost the prospect of a global settlement by giving consumers the right to demand more and faster "bellwether" arbitrations without artificial defendant-imposed restrictions. Businesses may insist on individualized arbitration despite

consumer perceptions that this prevents effective vindication of their rights. *Am. Exp. Co. v. Italian Colors Rest.*, 570 U.S. 228, 235–36 (2013). The same should be true when consumers insist on arbitration.

Finally, Kohl's revised terms are unconscionable because they combine an aggregative arbitration procedure with a class action waiver. OB 58–60.[5]

### 2.    Severance is no answer.

Kohl's argues that if the arbitration provisions of its revised terms are procedurally and substantively unconscionable, the Court must still enforce the severability clause in the revised terms, which would require Appellants to litigate in Wisconsin court.  RB 59–61.

Under Wisconsin law, a "contract may survive if an illegal clause can be severed from the remainder of the contract *without defeating the primary purpose of the bargain*."  *Baierl v. McTaggart*, 629 N.W.2d 277,

---

[5] Kohl's fairly points out that Appellants did not raise this argument below.  RB 63.  The case on which the argument relies, *Heckman v. Live Nation Ent., Inc.*, 120 F.4th 670 (9th Cir. 2024), was an important development in the law that post-dated the district court's order, which in any event did not pass on unconscionability.  This Court has discretion to consider the argument, as Appellants' not raising the argument below has caused "no one—not the district judge, not [the Court], not the appellee—any harm of which the law ought to take note."  *Amcast Indus. Corp. v. Detrex Corp.*, 2 F.3d 746, 749 (7th Cir. 1993).

281 (Wis. 2001) (emphasis added).   Assuming assent, the primary purpose of Kohl's revised terms was to implement new arbitration procedures—indeed, those were the most significant and material changes.  Severance is therefore inappropriate as a threshold matter.

There is another problem with Kohl's solution:  the class waiver remains even after severance of the arbitration clause.  Kohl's revised terms state that "[y]ou and Kohl's also waive any right to bring or participate in a class action in arbitration *or in litigation in court.*"  1-SA-105 (emphasis added).   That agreement is independent from the arbitration clause.  1-SA-102 ("Arbitration Agreement" at subpart a); 1-SA-105 ("Waiver of Class Actions" at subpart b).  Enforcement of the severability provision would therefore force Appellants to litigate in Wisconsin court without the benefit of the class device, which would be inconsistent with Wisconsin law.  *See Coady*, 729 N.W.2d at 746–47.

Put differently, enforcement of the severability clause would void the revised terms.  *See Sonday v. Dave Kohel Agency, Inc.*, 293 Wis. 2d 458, 488 (2006) ("a contract that is deemed contrary to public policy is void and unenforceable").  "[I]f the substituted contract is voidable, it discharges the original duty until avoidance, but on avoidance of the

substituted contract the original duty is again enforceable." Restatement (Second) of Contracts § 279 cmt. b (1981). And in all events, Kohl's breached the AAA arbitration agreement by failing to register it, even assuming it obtained assent from three of four Appellants through their later actions as Kohl's contends. RB 16. Where one party to an arbitration agreement breaches, the non-breaching party has "an election to put an end to the arbitration clause or to insist upon its performance." *Galt v. Libbey-Owens-Ford Glass Co.*, 376 F.2d 711, 714 (7th Cir. 1967). Appellants insist.

## IV. Kohl's Must Pay Appellants' Fees And Costs In The Compelled Arbitrations.

### A. Section 1281.97 Is Not Waivable And Mandates Sanctions On These Facts.

Appellants are Californians who have a non-waivable right to the protections California's legislature enacted to promote arbitration. OB 62–65. One of those protections is that businesses which require arbitration but then fail to pay "the fees or costs to initiate an arbitration proceeding . . . within 30 days after the due date" must face "[c]ompel[led] arbitration in which the drafting party shall pay reasonable attorney's fees and costs related to the arbitration." Cal. Civ. Proc. Code §§ 1281.97(a)(1), (b)(2).

Kohl's does not dispute that there are fees associated with Rule 12 registration, 2-SA-222, that the AAA asked Kohl's whether it would meet those obligations so that the AAA could begin administering arbitration, 2-SA-181, and that Kohl's did not and has not yet registered or paid registration fees. Instead, Kohl's reads into section 1281.97(a)(1) an "invoice" requirement from a different provision on which Appellants do not rely, section 1281.97(a)(2). RB 70. The facts that the AAA never issued an invoice or sought to recoup the registration "fees or costs to initiate an arbitration proceeding" that Kohl's refused to pay (to effectuate its refusal to arbitrate, no less) does not excuse Kohl's obligation under section 1281.97(a)(1). Kohl's is in "material breach" of the AAA arbitration agreement. Cal. Civ. Proc. Code § 1281.97(a)(1).

## B. The Parties Selected The FAA's Substantive Provision, Not Its Procedural Provisions.

To avoid this conclusion, Kohl's relies on a quasi-preemption argument that really sounds in contract. RB 64–67. It cites cases suggesting that parties to an arbitration agreement can adopt the FAA's procedures. RB 64–65. And it argues that the FAA preempts section 1281.97 as applied because any other ruling would defeat enforcement of the parties' contract "according to [its] terms." RB 65–67.

The problem with these arguments is that they lack support in the contractual text. To select the FAA's procedures, parties must "*expressly* designate that any arbitration proceeding should move forward under the FAA's procedural provisions rather than under state procedural law." *Cronus Invs., Inc. v. Concierge Servs.*, 107 P.3d 217, 229 (Cal. 2005). But all the parties agreed here is that:

> [T]hese Terms of Use affect interstate commerce and the Federal Arbitration Act, 9 U.S.C. § 1, et seq., and federal arbitration law apply to this Arbitration Agreement and *govern all questions as to whether a dispute is subject to arbitration.*

1-SA-079 (emphasis added). In other words, the parties acknowledged that the FAA's *substantive* provision mandating enforcement of their agreement applied, without specifying that the FAA's *procedures* would control. There is no conflict between the FAA's substantive provision and section 1281.97. *See* Section IV.C, *infra*. And the parties' choice reflects salient differences between the FAA's substantive and procedural provisions, especially as they apply to litigation in court. *Cronus Invs.*, 107 P.3d at 226 (recognizing the longstanding "distinction between the procedural and substantive aspects of the FAA").

31

There is another obvious reason that this interpretation of the contract is correct.  The parties selected *Wisconsin* procedural law.  1-SA-079; RB 11 (AAA arbitration agreement "governed by Wisconsin law.").  But that does not help Kohl's because there is no federal preemption angle and the California Appellants' statutory rights are not waivable "by private agreement."  Cal. Civ. Code § 3513; *see also* OB 62–65.

## C.    The FAA Does Not Facially Preempt Section 1281.97.

Courts have, on balance, rejected FAA preemption of section 1281.97.  OB 65–66.  For good reason.  "Pre-emption fundamentally is a question of congressional intent, and when Congress has made its intent known through explicit statutory language, the courts' task is an easy one."  *English v. Gen. Elec. Co.*, 496 U.S. 72, 78-79 (1990) (citation omitted).

As the Supreme Court has instructed, the preemption inquiry "begin[s] with the Arbitration Act and the question of its saving clause."  *Epic Sys. Corp. v. Lewis*, 584 U.S. 497, 505 (2018).  The source of FAA preemption is its command that:

> A written provision . . . to settle by arbitration a controversy . . . shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract.

32

9 U.S.C. § 2.  A state law that *does not* render an arbitration clause invalid, revocable, or unenforceable, does not conflict with that command.

Kohl's "unequal treatment" test derives from the saving clause.  *See Kindred Nursing Ctrs. Ltd. P'ship v. Clark*, 581 U.S. 246, 251 (2017) (describing the saving clause as "an equal-treatment principle: A court may invalidate an arbitration agreement based [only] on 'generally applicable contract defenses'").  But Kohl's application of that test, RB 67–68, ignores a fatal problem:  because section 1281.97 respects the parties' agreement as "valid, irrevocable, and enforceable," it does not conflict with § 2 regardless of whether it satisfies the saving clause as a "ground[] as exist[s] at law or in equity for the revocation of any contract." *Kindred Nursing Ctrs.*, 581 U.S. at 246–47 (quoting 9 U.S.C. § 2).

State law thus can provide targeted remedies *in aid* of arbitration without running afoul of the FAA.  Many states codify remedies in aid of arbitration, which federal courts uphold.  *See, e.g.*, *Borden, Inc. v. Meiji Milk Prods. Co.*, 919 F.2d 822, 826 (2d Cir. 1990) ("[F]ar from trying to bypass arbitration, Borden sought to have the court compel arbitration. New York law specifically provides for provisional remedies in connection with an arbitrable controversy, and the equitable powers of federal courts

33

include the authority to grant it." (citation omitted)).  States (and the FAA) also provide for specific performance of arbitration agreements, which itself could be said to "single out" arbitration clauses, since damages are the default remedy for breach of contract.  *See, e.g.*, Cal. Civ. Proc. Code § 1281.2.

The FAA does not preempt state laws that make arbitration more effective.  Section 1281.97 furthers rather than undermines the policies of the FAA.  It promotes the "two goals of the Arbitration Act— enforcement of private agreements and encouragement of efficient and speedy dispute resolution." *AT&T Mobility LLC v. Concepcion*, 563 U.S. 333, 345 (2011).  California's legislature passed section 1281.97 to advance those goals.  OB 63–64.  Preemption would only undermine them, and the FAA in the process.

## CONCLUSION

This Court should reverse the order denying Appellants' motion to compel arbitration and remand with instructions to grant the motion.

Dated: May 7, 2025

Respectfully submitted,

By: */s/ Kiran N. Bhat*

Kiran N. Bhat
*Counsel of Record*
KELLER POSTMAN LLC
1101 Connecticut Avenue, N.W.
Suite 1100
Washington, DC 20036
(202) 918-1123
*kiran.bhat@kellerpostman.com*

Ethan H. Ames
KELLER POSTMAN LLC
150 N. Riverside Plaza
Suite 4100
Chicago, IL 60606
(312) 741-5220
*ethan.ames@kellerpostman.com*

Martin Woodward
KITNER WOODWARD PLLC
13101 Preston Road
Suite 110
Dallas, TX 75240
(214) 443-4300
*martin@kitnerwoodward.com*

*Counsel for Petitioners-Appellants*

## CERTIFICATE OF COMPLIANCE

I certify that this brief complies with the type-volume limitation of Federal Rule of Appellate Procedure 32(a)(7)(B) and Circuit Rule 32(c) because, as calculated by Microsoft Word, it contains 6,979 words, excluding the parts of the brief exempted by Federal Rule of Appellate Procedure 32(f).  I also certify that this brief complies with the typeface and type-style requirements of Federal Rule of Appellate Procedure 32(a)(5) and (6) because it has been prepared in a proportionally spaced typeface using Microsoft Word in a 14-point Century Schoolbook font.

Dated: May 7, 2025                    */s/ Kiran N. Bhat*
                                       Kiran N. Bhat

                                       *Counsel for Petitioners-Appellants*